469 P.2d 544

The STATE of Idaho, Plaintiff-Respondent,

v.

Larry Cleveland PRICE, Defendant-
Appellant,

and

Curtis Lee Alexander and Patricia
Alexander, Defendants.

No. 10496.

Supreme Court of Idaho.

April 30, 1970.

Rehearing Denied June 10, 1970.

Rayborn, Rayborn, Webb & Pike, Twin
Falls, for defendant-appellant.

Robert M. Robson, Atty. Gen., and Stew-
art A. Morris, Asst. Atty. Gen., Boise, for
plaintiff-respondent.

McQUADE, Justice.

The defendant-appellant, Larry Cleve-
land Price, together with defendants Curtis
Lee Alexander and Patricia Alexander,
were charged with the crime of grand
larceny alleged to have been committed
in Buhl, Twin Falls County, Idaho, in
September, 1968. Price and Patricia Alex-
ander were tried before a jury and found
guilty as charged on May 20, 1969. At the
end of the State's case the appellant moved
that the jury be given an advisory instruc-
tion to acquit. That motion was denied.
Subsequent to the trial and sentencing,
appellant made a motion for a new trial,
which motion was also denied. Appeal has
been taken from the judgment of the court
and its order denying the motion for a new
trial. Appellant offered no evidence in the
trial court, and it was his contention there,
as it is here, that the prosecution failed to
prove him guilty of grand larceny beyond
a reasonable doubt as a matter of law.

The prosecution was compelled to rely
on inferences to be drawn from uncontro-
verted circumstances in order to prove its
case at trial. On September 27, 1968, Iris
Erb, who, with her husband, operates Erbs'
market, in Buhl, placed $1,000 in five and
ten dollar bills in a blue bag in a cashbox
under the #4 checkstand in that store.
The total in the bag was then approximate-
ly $1,500 in bills of the same denominations.
During the afternoon the employees of the
market removed nearly $300 from the bag
in order to change large bills and to cash

customers' checks. At 5:30 p. m., Mrs. Erb removed $50 from the cashbox. She estimated that, at that time, there was $1,200 in the bag which contained only five and ten dollar bills.

The cashbox at the #4 checkstand was easily reached from the aisle of the #3 checkstand in Erbs' Market. The two are separated by only a four foot high plywood partition. The key to the box was left on the cash register of the 4th checkstand by Mrs. Erb.

Between 5:30 and 6:00 p. m., appellant and his co-defendants entered Erbs' Market. Defendant Patricia Alexander proceeded to purchase a bottle of soft drink at the #3 checkstand. While the cash register operator opened the bottle for her, appellant and defendant Curtis Lee Alexander "stood very close together" behind the scales of the #3 checkstand with apparently easy access to the cashbox in the #4 checkstand. Appellant then walked to the back of the store and returned to another checkstand to purchase a loaf of bread and some lunch meat. While he was doing this, defendant Curtis Lee Alexander had walked out to a car, a gold Cougar with Oregon license plates. Upon noticing that he was being watched, he then walked to the front of the car and then around and back to the door of the driver's side. The defendants' car was next seen being driven back and forth on Maple Street in Buhl. When the appellant left Erbs' Market he was seen walking towards Maple Street, and the blue money bag which, at 5:30 p. m., had contained approximately $1,200, was found empty at the corner of Maple and Ninth Streets at about 6:30 p. m.

At approximately 6:40 p. m. Mr. Erb discovered that the bag of five and ten dollar bills was missing. Upon discovering that the bag had not been placed in the store's safe or otherwise secured by either an employee or Mrs. Erb, Mr. Erb called the police and reported a robbery.

Shortly after 7:00 p. m. on September 27, 1968, a state police officer and a state liquor control officer, having been advised by radio that the gold Cougar with Oregon license plates was rapidly coming their way, positioned themselves near the Burley Interchange on I–80N. When they saw the car and they began following it, the defendants decelerated very rapidly and pulled off of the interstate highway onto the roadway into Burley. There they drove into the rear parking area of a service station, and defendant Patricia Alexander hurriedly exited from the car. The officers made no attempt to stop her, but went to the defendants' automobile and asked the two male defendants why they were in a hurry. The defendants responded that they were coming from Bliss and that they were in no hurry.

Patricia Alexander had, by this time, crossed the street to another service station. She stood in front of this second station for a short while, and then she walked toward the side in which the women's restroom was located. When next observed, she was leaving that area and was stopped by the attendant and presented to the police. Later, after *Miranda* warnings had been given to her, Patricia Alexander was asked why she had run from the car. She responded with words indicating that her male companions had told her to "jump and run."

Later that night the police, having searched the gold Cougar automobile and having found none of the stolen money, returned to search the filling stations where the defendants had been arrested. There, beneath an inter-liner of a waste receptacle in the women's restroom of the second service station, they found a parcel wrapped in toilet paper. This oblong bundle contained $1,215, in five and ten dollar bills.

■ Appellant, as his fourth assignment of error, asserts that the district court erred in giving its instruction number eleven. "You are advised that the evidence offered by the State for the purpose of offering proof on some of the essential elements of the crime alleged is entirely circumstantial in nature. Circumstantial evidence must always be viewed with

caution, and before any defendant may be found guilty upon circumstantial evidence, you must find beyond a reasonable doubt that the circumstances are consistent with the guilt of that defendant and inconsistent with the innocence of that defendant and incapable of explanation of any other reasonable hypothesis than that of guilt.

"If the circumstances are reasonably reconcilable or explainable on a thesis other than that of guilt of the defendants, then the State has not satisfied its burden, and your verdict must be one of acquittal."

This instruction differed from defendants' requested instruction number three only in that the latter instruction stated that there was *no* direct evidence of *any* elements of the crimes charged. There was direct evidence that personal property of the Erbs had been taken from their possession on or about September 27, 1968. To that extent there was direct evidence of an element of the crime charged in the information. The other elements of the crime were proven by circumstantial evidence. The trial court was, therefore, correct in instructing the jury that "proof on some of the essential elements of the crime alleged [was] entirely circumstantial in nature." In all respects intruction number eleven is a correct statement of the law.[1]

■ Appellant's remaining four assignments of error present the single issue of whether or not the evidence, as set out above, was adequate to support the jury's finding that the appellant was guilty of larceny of $1,200 from Erbs' Market. Although a conviction may be based on circumstantial evidence only if the circumstances, as found by the jury, are consistent with the defendants' guilt and inconsistent with his innocence,[2] "the conclusion of guilt need not necessarily follow from the circumstances in proof, but may be obtained therefrom by probable deductions."[3] A mere possibility of innocence will not render a verdict of guilty a nullity.[4] The jury could deduce from the evidence that appellant was guilty of the crime of larceny beyond a reasonable doubt. There was testimony that he and his co-defendants had an opportunity to commit the crime, that he and his co-defendants acted suspiciously during the period when the crime was committed, that one of his co-defendants fled from the police, that misleading statements were made to the police, and that money in about the same amount and the identical denominations of that stolen was found at the scene of the defendants' apprehension. Each of these circumstances were probative of appellant's participation in the larceny and of his possession of the stolen money.[5] The cumulative effect of this evidence is more than adequate to establish the ultimate fact of guilt. Where, as here, there is competent, substantial, though conflicting, evidence to sustain a jury's verdict, this Court will not disturb the judgment.[6]

Judgment affirmed.

McFADDEN, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.

1. *See* State v. Davis, 69 Idaho 270, 206 P.2d 271 (1949) ; State v. McLennan, 40 Idaho 286, 302, 231 P. 718, 723 (1925); State v. Marcoe, 33 Idaho 284, 193 P. 80 (1920).

2. State v. McLennan, *supra* note 1; *see* State v. Hix, 58 Idaho 730, 741, 78 P.2d 1003 (1938); State v. Carlson, 53 Idaho 139, 147, 22 P.2d 143 (1933) ; State v. Marcoe, *supra* note 1.

3. State v. McLennan, *supra* note 1, 40 Idaho at 302, 231 P. at 723, quoted with approval in State v. Ponthier, 92 Idaho 704, 708, 449 P.2d 364, 368 (1969).

4. *See* State v. McLennan, *supra* note 1.

5. *See* State v. Ponthier, *supra* note 3; State v. Cofer, 73 Idaho 181, 188, 249 P.2d 197 (1952) (similarity of amounts and denominations); State v. Golden, 67 Idaho 497, 510, 186 P.2d 485 (1947) (flight); People v. Loar, 165 Cal.App. 2d 765, 333 P.2d 49, 55 (1958) (misleading statements).

6. State v. Ponthier, *supra* note 3; *see* State v. Pruett, 91 Idaho 537, 428 P.2d 43 (1967); State v. Booton, 85 Idaho 51, 375 P.2d 536 (1962).