818 P.2d 787

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Andre SIMMONS, Defendant–Appellant.**

**Nos. 18474, 18796.**

Court of Appeals of Idaho.

Oct. 4, 1991.

674

Alan E. Trimming, Ada County Public Defender, Timothy L. Hansen, Deputy Public Defender, argued, Boise, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Richard S. Christensen, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

HART, Judge Pro Tem.

Andre Simmons was convicted by a jury of second degree burglary. He was sentenced to five years incarceration, with the first three years fixed. He asserts that the evidence police seized when they arrested him should have been suppressed because they did not have a reasonable and articulable suspicion to stop and frisk him and that the frisk was improperly conducted. He

also argues that the court erred when it admitted into evidence certain items, abused its discretion in sentencing, and erred when it denied his motion for reconsideration of his sentence. For the following reasons, we affirm.

### Facts

On the evening of March 31, 1989, the victim, a resident of Meridian, Idaho, came home to find that his collection of silver dollars, worth approximately $177,000, had been stolen. He called the police. Little helpful evidence was found at the scene. However, it was later discovered that the victim's neighbor had seen a black male with a relatively light complexion and a large Afro-style hairdo drive down their lane about 5:00 p.m. that night and get out of the car near the victim's home. The car, driven by someone else, left the scene. About ten minutes later, she saw the same person walking away from the house on the next lane over.

The Ada County Sheriff's Department notified the area pawnshops to be alert for a person selling silver dollars and matching the description given by the victim's neighbor. On April 4, 1989, Detectives Rodney Marshall and David Clough received a phone call from a local pawnbroker that a person fitting the description the detectives had provided had been in the store trying to sell silver dollars. The pawnbroker told them that he sent the person to a store referred to as "Deluxe Pawn" in downtown Boise. When detectives Clough and Marshall arrived at Deluxe Pawn, they saw a black male with a light complexion and a large Afro-style haircut, wearing a long wool coat, standing at the counter of the store. The person was later identified as Andre Simmons. Detective Marshall approached Simmons and asked where he had gotten the coins. About the same time, Detective Clough noticed a bulge in the right-hand exterior pocket of Simmons' coat and told Detective Marshall. Detective Marshall then conducted a pat-down search for weapons and found a small glass and brass pipe with a screen in the bowl that he concluded was used for smoking illegal narcotics. Simmons was arrested for possession of drug paraphernalia, a misdemeanor. The store clerk informed Detective Marshall that Simmons was attempting to sell four silver dollars that were on the counter in front of him.

After his arrest and being apprised of his rights, Simmons told the detectives that he had received the coins from a person named Mark Russell, a name Simmons had given earlier as his own. Also, Simmons had countersigned the pawn slips as Mark Russell. Later, he gave his name as Gene Wilson. Upon further questioning, Simmons stated that he received the silver dollars from a person named Vince.

At a photographic line-up, the victim's neighbor identified Simmons as the man she saw near the victim's home on the day the victim reported his coin collection missing. A preliminary hearing was held on May 19, 1989. The magistrate found probable cause to bind Simmons over on the burglary charge. An information was filed on May 23, 1989, accusing him of second degree burglary. Simmons filed a motion to suppress any statements he made to the detectives after his arrest, asserting that they did not have reasonable grounds to search him. The motion was denied. At trial, a jury found Simmons guilty of second degree burglary. The court imposed a five year sentence, with the first three years fixed. Simmons filed this appeal. Later, he filed a motion under Idaho Criminal Rule 35 for reconsideration of his sentence, which was denied. He then filed an appeal from the denial of that motion. The two appeals were consolidated for disposition in this proceeding.

### Issues on Appeal

1. Did the court err when it denied Simmons' motion to suppress evidence, holding that the detectives had reasonable grounds to frisk Simmons and the search was properly conducted?

2. Did the court err when it admitted into evidence silver dollars that the victim was unable to specifically identify?

3. Did the court impose an excessive sentence?

4. Did the court err when it denied Simmons' Rule 35 motion for reconsideration of his sentence?

### The Search

Simmons does not challenge the detectives' act of approaching him in the pawnshop. Rather, he asserted in his motion to suppress and again asserts on appeal that Detectives Marshall and Clough did not have adequate grounds to search him. We agree with the trial court that the officers had a reasonable and articulable suspicion for stopping and searching Simmons in the pawnshop.

First, we note our standard of review. A judge's factual findings on a motion to suppress will not be disturbed unless they are clearly erroneous. *State v. Campbell*, 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). However, the same degree of deference does not necessarily apply to a trial court's determination that the facts found demonstrate compliance with constitutional requirements for a valid warrantless search. Such a determination may be viewed as a matter of law, freely reviewable on appeal. E.g., *People v. Leyba*, [29 Cal.3d 591], 174 Cal.Rptr. 867, 629 P.2d 961 (1981).

\* \* \* \* \* \*

Accordingly, we believe that the proper standard of review is one of deference to factual findings unless they are clearly erroneous, but free review of a trial court's determination as to whether constitutional requirements have been satisfied in light of facts found.

*State v. Rusho*, 110 Idaho 556, 559, 716 P.2d 1328, 1331 (Ct.App.1986).

Generally, the Fourth Amendment to the United States and Idaho Constitutions prohibits unreasonable searches and seizures. A search without a warrant is per se unreasonable unless it falls within one of the exceptions to the Fourth Amendment requirements. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v.*

*Post*, 98 Idaho 834, 573 P.2d 153 (1978), *overruled on other grounds, State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981); *State v. Harwood*, 94 Idaho 615, 495 P.2d 160 (1972). One of the exceptions is when the police validly stop a person to investigate possible criminal behavior, even though there is no probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This kind of investigative stop has been defined as one in which, based on all the circumstances, the police have a particularized suspicion that the individual being stopped is engaged in wrongdoing. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Johns*, 112 Idaho 873, 736 P.2d 1327 (1987). Put differently, an investigatory or *Terry* stop is justified under the Fourth Amendment if there is a reasonable and articulable suspicion that the person has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The Court in *Terry* held that the police may conduct a warrantless search of a person, without arresting them, if they are conducting the search for the limited purpose of discovering weapons on the person of someone who has been detained in an investigative stop. *See Post, supra.* To have a lawful *Terry* search, the officer conducting the search must be able to "articulate, with particularity, facts which reasonably justify a frisk for weapons." *State v. Burgess*, 104 Idaho 559, 560, 661 P.2d 344, 345 (Ct.App.1983). *See Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). In analyzing the frisk, this court considers the facts known to the officer on the scene and the inference of risk of danger reasonably drawn from the totality of the circumstances. *State v. Muir*, 116 Idaho 565, 777 P.2d 1238 (Ct. App.1989).

Although Simmons does not challenge the fact that the detectives stopped him, for reasons of clarity we set out the court's findings of facts on that issue. Here, the district court found that: (1) a

young black male with a relatively light complexion, about six feet tall with an Afro-style haircut, had stolen silver dollars; (2) the Ada County Sheriff's Department notified the local pawnshops to be alert for such a person; (3) a few days after the theft was reported, they received a call from a pawn shop that a person matching the suspect's description was trying to sell four silver dollars; (4) the pawn shop operator sent the suspect to Deluxe Pawn; (5) Detectives Marshall and Clough drove to Deluxe Pawn where they saw the suspect apparently attempting to sell coins. The court found that these facts gave the officers an articulable basis to believe that the person in the store was the burglar of the victim's home. Consequently, they had sufficient grounds to make an investigative *Terry* stop of the suspect "to inquire and confirm or dispel their suspicions" and they did not violate the Fourth Amendment by stopping and talking to him.

■ The record supports the court's finding that the detectives had articulable facts from which they could reasonably believe that they may have been in danger and could protect themselves by conducting a frisk for weapons. The court determined that: (1) The detectives were encountering a burglary suspect; (2) he was wearing a long wool coat that seemed out of place for the weather of the day, and which could have been used to conceal weapons; (3) the suspect appeared nervous and was sweating; (4) Detective Clough observed a bulge in an exterior pocket of the suspect's coat; (5) when Detective Marshall frisked the suspect, he felt a hard object in the coat pocket that possibly felt like a small gun or knife; (6) he reached his hand in and pulled out a pipe that appeared to be one used for smoking illegal drugs. The court found that having found the pipe, the officers could make a warrantless arrest of the suspect because possession of the pipe constituted a misdemeanor committed in their presence.

We do not find the district court's findings of facts on this issue to be clearly erroneous. We agree with the court that the totality of the circumstances warranted

the detectives to stop Simmons, and when they noticed the bulge in his overcoat pocket, they had reasonable grounds to be concerned for their safety and to conduct a frisk for weapons. However, Simmons asserts that the facts the detectives articulated for searching him were not reasonable, that is, that wearing a long wool coat on a 60 degree day, by itself, does not create reasonable, articulable suspicion; that sweating while wearing the coat indoors, and looking nervous, is not suspicious; and that the officers had no objective reason to be afraid of him. Considered in isolation, the facts Simmons points to may support his argument. Taken together, however, all of the information the police had about the case generated a reasonable, articulable suspicion, and a concern for their safety which warranted the intrusion. Detective Marshall did testify that before encountering Simmons he knew of no reason to fear him. However, we find it reasonable that an officer who approaches a burglary suspect while the latter is attempting to dispose of stolen goods would seek to protect himself by searching the suspect for weapons. As stated in *Terry,* "the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

Next, Simmons argues that even assuming the detectives had reasonable grounds for subjecting him to a search, the search was improperly conducted. We disagree.

■ The trial court's findings of fact concerning this issue are that after Detective Clough told Marshall of the bulge in Simmons' coat pocket, Simmons was told to put his hands on the counter. Marshall then patted him down, noting that the bulge in the pocket felt like a small gun or knife. The court found that after that act, Marshall reached his hand into Simmons' pocket and withdrew the illegal pipe for which he was arrested.

Detectives Marshall and Clough presented conflicting testimony as to the manner

of the search. At the hearing on the motion to suppress, Detective Marshall testified that after Clough told him of the bulge in the pocket, Marshall conducted the patdown search wherein he felt the pipe in Simmons' pocket. Marshall stated that "It was a hard object. You know, shape could be felt to be a small gun, knife. I didn't really know what it was at the time." Clough, however, testified that "I observed the bulge in the pocket, and ordered him to put his hands on the counter. As he put his hands on the counter, Marshall reached in and we obtained a pipe, paraphernalia-type pipe." The trial court apparently relied on the statements of Detective Marshall. We find it logical and reasonable that the court would rely on the officer who actually conducted the search. Based on our review of the record, we find the court's finding is not clearly erroneous and the search by Detective Marshall did not run afoul of the Fourth Amendment.

### The Silver Dollars

Simmons argues that the victim could not identify many of the silver dollars as his own and therefore the court erred when it admitted the coins, as two different exhibits, into evidence. At trial, counsel objected to Exhibit 8, a bag of 22 loose silver dollars, and Exhibit 9, which consisted of four silver dollars in protective cardboard containers. Simmons' counsel agreed at trial that Exhibit 8b, a 1898-S Morgan silver dollar, was sufficiently identified as the victim's to allow its introduction into evidence. We find that the court properly admitted the other two exhibits.

■ Questions of admissibility of evidence are for the determination of the court. I.R.E. 104. Relevant evidence is admissible if it is probative and not prejudicial. I.R.E. 402, 403. Our rules of evidence require that all evidence be authenticated or identified as a condition precedent before admissibility. I.R.E. 901. The requirement of identification "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Two ways of identifying evidence are by the testimony of

witnesses with knowledge that an item is what it claims to be and by testimony as to distinctive characteristics of the item. I.R.E. 901(b)(1), (4). The party offering an exhibit must lay a foundation through a witness or witnesses who can identify the items as being connected with the crime. *State v. Wilroy,* 150 Mont. 255, 434 P.2d 138 (1967).

■ Generally, when a physical object is offered in evidence and a question of fact arises as to its connection with either the defendant or the crime, the object should be admitted for such weight and effect as the jury decides to give it, unless it is clearly irrelevant. *State v. Ponds and Garret,* 218 Kan. 416, 543 P.2d 967 (1975), *overruled on other grounds,* 230 Kan. 385, 635 P.2d 1236 (1981). See also *Chaney v. State,* 612 P.2d 269 (Okla.1980), *cert. denied,* 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981). The court does not need a positive and indisputable description of the object in order to admit it into evidence. *Gresham v. State,* 456 P.2d 119 (Okla.1969). Lack of positive identification goes to weight, not admissibility. *Id.* See also *State v. Amaya–Ruiz,* 166 Ariz. 152, 800 P.2d 1260 (1990), *cert. denied,* — U.S. —, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991); *State v. Skelton,* 129 Ariz. 181, 629 P.2d 1017 (App.1981); *State v. Baker,* 219 Kan. 854, 549 P.2d 911 (1976); *Young v. State,* 701 P.2d 415 (Okla.1985); *State v. Mitchell,* 56 Wash.App. 610, 784 P.2d 568 (1990). Further, because of the physical nature of coins and currency, to sufficiently identify the money to make it admissible as relevant evidence, it is not necessary that the witness identify each bill or coin separately, rather, the witness may testify that the money appears to be the same money alleged to have been stolen after considering its amount, denominations, packaging and general appearance. *State v. Jakeway,* 221 Kan. 142, 558 P.2d 113 (1976). See also *State v. Price,* 93 Idaho 615, 469 P.2d 544 (1970), *cert. denied,* 400 U.S. 959, 91 S.Ct. 359, 27 L.Ed.2d 268 (1970).

■ We agree with the trial court that there was sufficient foundation to admit

Exhibits 8 and 9. The victim's neighbor testified that she saw Simmons near the victim's home the day the burglary was reported. George Coe, an employee of Idaho Stamp and Coin, testified that Simmons had been in the store on two separate days near the day of the burglary and had sold between thirty and forty silver dollars to Coe. When Jim Beem, the owner of the shop returned a few days later, he recognized one of the coins as a rare 1898–S Morgan dollar, minted in San Francisco, with a very high "mint strike" value, that he had sold to the victim nearly ten years previously. Both the victim and Beem testified to the unique qualities of the coin and established that it was part of the victim's collection. Exhibits 8 and 9 contained coins that were not as rare and consisted of silver dollars that had been in circulation. However, the victim testified that these coins were the same as coins he had registered in his personal inventory.

We find support for our conclusion in *State v. Ponthier,* 92 Idaho 704, 449 P.2d 364 (1969), wherein the defendant in a burglary prosecution argued that the cigarettes and cigars found in his car after an accident could not be accurately identified as those recently stolen from a local market. The defendant, while driving drunk, had crashed his car. When the police arrived, they found 792 packages of cigarettes and 18 packages of cigars. Seven hours earlier, a local store had reported a theft of 200 cartons of cigarettes and several packages of cigars. By comparing the type and quantity of the items found in Ponthier's car with the type and quantity stolen, and the proximity of time between when they were stolen and when they were found, the court found that the state had met its burden of sufficiently identifying the evidence to warrant its introduction.

Similarly, we find that there was sufficient foundation to admit into evidence Exhibits 8 and 9 in this case. Although Simmons was arrested possessing only four silver dollars out of the nearly three hundred that were stolen, we do not find this issue dispositive. Simmons had, on two recent, previous occasions, sold a large number of silver dollars to Idaho Stamp and Coin. The victim's rare 1898–S Morgan dollar was found in a group of coins Simmons sold to the store and was identified by two people as belonging to the victim's collection. He was arrested attempting to sell four silver dollars in protective containers to Deluxe Pawn. Mr. Beem identified the packaging as the type used in his store—the store from which the victim had originally bought his coins.

After the coins were admitted into evidence, the jury was free to draw its own conclusions from that evidence. It was not necessary that the evidence be definitively identified or conclusive. A conviction may be based on circumstantial evidence, and the conclusion of guilt may be based on proof of the circumstances and the probable deductions from those circumstances. *Price, supra; Ponthier, supra.* Further, "evidence that an accused sold property similar to items taken in a recent burglary is circumstantial evidence of the defendant's guilt, although alone is insufficient to sustain a guilty verdict." *State v. Heistand,* 107 Idaho 218, 219, 687 P.2d 1001, 1002 (Ct.App.1984). *See State v. Bullis,* 93 Idaho 749, 472 P.2d 315 (1970) (evidence of possession of unidentified property of the same general description as recently stolen property is admissible circumstantial evidence).

### The Sentence

Simmons contends that his sentence is excessive and was imposed primarily out of retribution. He argues that the court did not address the primary goal of sentencing, protection of society, and that the three year minimum sentence, imposed for purposes of punishment only, is "per se unreasonable" given the circumstances of this case.

Sentencing is a matter left to the discretion of the trial court. *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989). A sentence fixed within the limits prescribed by statute ordinarily will not be considered an abuse of discretion. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). However, a sentence may represent an

abuse of discretion if it is shown to be unreasonable upon the facts of the case. *Id.* A sentence is reasonable if it appears to accomplish the objective of protecting the good order of society and is imposed to achieve any or all of the related goals of deterrence, rehabilitation or retribution. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence of confinement that is longer than necessary to serve these goals is unreasonable. *Id.* When evaluating a sentence imposed under the Unified Sentencing Act, I.C. § 19–2513, the minimum fixed period generally will be treated as the probable measure of confinement for the purpose of sentence review. *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). We are unable to speculate as to a possible longer term of confinement beyond the minimum term because the Commission on Pardons and Parole is vested with the discretion to grant or deny parole at any time after completion of the fixed term until the expiration of the maximum term. I.C. § 19–2513. *See State v. Bartlett,* 118 Idaho 722, 800 P.2d 118 (Ct.App.1990). Thus, we will treat Simmons' probable term of confinement as three years. When reviewing a sentence, we examine the facts in the record independently and focus on the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

 Simmons acknowledges that his sentence is within the statutory limit of five years. *See* I.C. 18–1403. He argues that his circumstances merited a shorter sentence and the court did not address all of the sentencing goals articulated in *Toohill* and focused only on the goal of retribution. We disagree. The court imposed its sentence only after noting that Simmons had been convicted of three separate burglaries in Ada County before sentencing on the instant charge. Since 1988, Simmons has been charged with eight burglaries, only five of which have been prosecuted. He had been released on bail and was awaiting sentencing on another burglary conviction when he committed the instant offense. The judge stated that considering

Simmons' record, his activities in this case, and his problems, "I don't think there's any possibility in the world that I would consider putting him on probation at the end of six months." Simmons admittedly was committing these burglaries to feed his $1,000 a week drug habit. The court found the instant case particularly serious because it involved a burglary of a home, with its greater intrusion into people's lives, greater personal loss, and greater chance for injury when compared to Simmons' previous commercial burglaries. We find these comments to reflect the court's concern for the protection of society. The safety of people in their homes, with their belongings, was paramount in the court's decision. Given the circumstances of this case, we find no abuse of discretion in the sentence, and no error.

### The Rule 35 Motion

Simmons filed his motion for reconsideration of his sentence on April 11, 1990. The court denied the motion without a hearing. We find no error in the court's action.

 A Rule 35 motion to reduce an otherwise lawful sentence is addressed to the sound discretion of the sentencing court. *State v. Forde,* 113 Idaho 21, 740 P.2d 63 (Ct.App.1987). Such a motion is essentially a plea for leniency, which may be granted if the sentence imposed was unduly severe. *Id.* The question presented on appeal from a denial of a motion under Rule 35 is whether the facts presented in connection with the motion, when viewed in the context of information in the record, show that the district judge abused his discretion in failing to grant the leniency requested. *State v. Wright,* 114 Idaho 451, 757 P.2d 714 (Ct.App.1988). When reviewing the denial of the motion, we review the entire record and the application of the same criteria used to determine the reasonableness of the original sentence, and those criteria focus on the nature of the offense and the character of the offender. *State v. Smith,* 117 Idaho 657, 791 P.2d 38 (Ct.App.1990).

In his motion, Simmons asserted that his one year in custody was punishment

enough. He was in minimum security with "off compound status" and had shown his ability to work within the rules of the system. He argued that there was no need for further incarceration and that he wanted to make restitution to the victim but could not while incarcerated. He requested that he be put on probation.

■ We find no abuse of discretion in the court's denial of Simmons' motion. The court found the following factors dispositive: While serving his sentence, Simmons was also serving a rider on a separate first degree burglary charge. In that case, the jurisdictional review committee recommended that the court relinquish jurisdiction because Simmons had committed numerous disciplinary offenses while in custody, including possession of controlled substances. He now has five burglary convictions. The court noted that Simmons, though twenty years old, had gained only a ninth grade education, had no history of gainful employment, and is admittedly addicted to crack cocaine and "crank." In its denial, the court specifically considered the sentencing factors of rehabilitation, punishment, deterrence, protection of society and proportionality, and decided that the original sentence was appropriate. We find that the motion was properly denied.

Conclusion

The police had a reasonable, articulable suspicion to stop and frisk Simmons. Under the totality of the circumstances, the bulge in Simmons' coat pocket produced a reasonable belief in the officers that Simmons, as a burglary suspect, may have been armed and justified their search for weapons. The search was conducted in an appropriate manner. The silver dollars were sufficiently identified as belonging to the stolen collection to allow their introduction into evidence. Finally, Simmons' sentence was reasonable and the court did not err when it denied his motion for reconsideration of the sentence. Accordingly, we affirm the judgment of conviction, the sentence imposed, and the order denying reconsideration of the sentence.

WALTERS, C.J., and SWANSTROM, J., concur.