988 P.2d 700

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Carlo FERREIRA, Defendant–Appellant.**

No. 24882.

Court of Appeals of Idaho.

Aug. 5, 1999.

As Amended Nov. 15, 1999.

Review Denied Nov. 16, 1999.

I.

## BACKGROUND

On August 31, 1997, at approximately 1:12 a.m., a Garden City police officer observed a vehicle traveling in excess of the posted 35 mph speed limit. The officer visually estimated the vehicle's speed to be 45 mph, which was subsequently confirmed by a radar unit to be 47 mph. The officer effectuated a traffic stop of the vehicle.

The officer approached the vehicle and asked the driver for his license, registration, and proof of insurance. The driver verbally identified himself as Ferreira and produced his registration and proof of insurance. Ferreira did not have his driver's license with him at the time of the stop. During this exchange, the officer detected an odor of alcohol and asked Ferreira if he had been drinking. Ferreira responded that when dining he had consumed two glasses of wine and a glass of cognac. The officer asked Ferreira to exit and step behind his vehicle so that field sobriety tests could be performed. Ferreira performed the tests. He obtained a maximum of six points on the horizontal gaze nystagmus test. He also swayed and placed his foot onto the ground while performing the one-leg stand test. Finally, during the heel-toe walking test, Ferreira could not remain in the heel-toe position during the instructional phase of the test, missed several heel-toe steps, raised his arms over six inches, took the wrong number of steps, and made an improper turn. Based on these observations, the officer determined that Ferreira was driving under the influence of alcohol and arrested him.

After transporting Ferreira to jail, the officer read Ferreira the I.C. § 18–8002(3) blood alcohol investigation advisory form. Ferreira stated that he did not understand that he had no right to consult with an attorney and requested that he be permitted to do so. The officer informed Ferreira that, under Idaho law, he did not have the right to speak with an attorney before submitting to the breath test. The officer then offered Ferreira a breath test, and Ferreira stated that he wished to have a blood test drawn. After

Nevin, Herzfeld & Benjamin, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

PERRY, Chief Judge.

Carlo Ferreira appeals from the district court's decision affirming the magistrate's order suspending Ferreira's driver's license for refusal to submit to a breath test. I.C. § 18–8002(4). For the reasons set forth below, we affirm.

the officer informed Ferreira that he could have an independent blood test drawn at his own expense, following the breath test, Ferreira refused to submit to a breath test, stating that he was "not given ... the right to talk to my lawyer or my due process." As a consequence of Ferreira's refusal of the breath test, the officer seized Ferreira's driver's license as authorized by I.C. § 18–8002(4)(a).

Ferreira requested a hearing pursuant to I.C. § 18–8002(4)(b) to show cause why his driver's license should not have been suspended. At the conclusion of the hearing, the magistrate ruled that Ferreira had failed to satisfy his burden under the statute and ordered his license suspended. Ferreira appealed to the district court, which affirmed. Ferreira again appeals.

## II.

## DISCUSSION

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Hentges v. Hentges*, 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).[1]

■ The hearing conducted below was a show cause hearing pursuant to I.C. § 18–8002(4), wherein Ferreira argued that his civil rights were violated by the officer's request that Ferreira perform the field sobriety tests. Therefore, the show cause hearing was a *de facto* suppression hearing. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128

Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App. 1996).

Ferreira does not challenge the factual findings of the magistrate or the propriety of the initial traffic stop by the officer. He does challenge, however, the performance of the field sobriety tests on both state and federal constitutional grounds. The threshold issue raised by Ferreira's appeal is what standard—probable cause or reasonable suspicion—is required before an officer may administer field sobriety tests. Ferreira contends that probable cause should be required under both the United States and Idaho Constitutions. He argues that the question with regard to the federal constitution is unsettled in Idaho and that the question with regard to the state constitution is one of first impression. Additionally, Ferreira asserts that, even if only reasonable suspicion is required, the officer did not possess such suspicion before he administered the field sobriety tests.

Idaho Code Section 18–8004 states, in relevant part:

(1)(a) It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or who has an alcohol concentration of 0.08, ... or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

With this statute in mind, we turn to Ferreira's arguments.

### A. Fourth Amendment

Ferreira contends that the Fourth Amendment requires probable cause to believe a driver is operating his or her vehicle in violation of I.C. § 18–8004 before field sobriety tests can be administered.[2] Ferreira's argu-

1. In light of this standard of review, it is unnecessary for the Court to address Ferreira's assertion that the district court erred in not ruling on his constitutional claims.

2. Ferreira argues that Idaho has previously decided that the Fourth Amendment requires probable cause before field sobriety tests may be administered, and relies on *State v. Reichenberg*,

128 Idaho 452, 915 P.2d 14 (1996) and *State v. Armbruster*, 117 Idaho 19, 784 P.2d 349 (Ct.App. 1989). However, *Reichenberg* was a case wherein the Supreme Court addressed the appellant's double jeopardy argument and, in *dicta*, stated that the officer had probable cause to administer field sobriety tests. Additionally, in *Armbruster*, this Court specifically declined to decide whether the field sobriety tests constituted an illegal

ment essentially states that because his reasonable expectation of privacy was intruded upon by the field sobriety tests, probable cause is required before such tests may be administered. Ferreira contends that field sobriety tests require the driver to perform maneuvers that are not regularly shown in public and expose to police and public view things that are not obvious through passive observation of a person. He asserts, therefore, that the law should require that an officer possess probable cause before field sobriety tests may be administered.

 A seizure occurs—and the Fourth Amendment is implicated—when an officer, by means of physical force or show of authority, has in some way restrained a citizen's liberty. *State v. Fry*, 122 Idaho 100, 103, 831 P.2d 942, 944 (Ct.App.1991). The critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. *Id.* at 104, 831 P.2d at 945. When an officer administers field sobriety tests, the driver of the vehicle is not free to ignore the officer's request. Thus, there can be no doubt that the Fourth Amendment to the United States Constitution was implicated by the administration of field sobriety tests in the instant case.

 However, Ferreira's contentions are only the beginning of the analysis. In order for the Court to address the quantum of suspicion required before an officer may administer field sobriety tests, it must first give constitutional dimension to such an encounter between police and the citizens of this state. Although there are three categories of encounters between citizens and the police, *State v. Knapp*, 120 Idaho 343, 346, 815 P.2d 1083, 1086 (Ct.App.1991), for the purposes of this appeal, we are concerned with but two—an arrest and an investigative detention. An arrest is characterized as a full-scale seizure of the person requiring probable cause. *State v. Zapp*, 108 Idaho 723, 726–27, 701 P.2d 671, 674–75 (Ct.App.

1985). An investigative detention is characterized as a seizure of limited duration which, when supported by a reasonable suspicion of criminal activity, falls within a judicially created exception to the probable cause requirement. *Id.*

 A search without a warrant is per se unreasonable unless it falls within one of the exceptions to the Fourth Amendment requirements. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, (1971); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Simmons*, 120 Idaho 672, 676, 818 P.2d 787, 791 (Ct.App.1991). One of the exceptions is when the police validly stop a person to investigate possible criminal behavior, even though there is no probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Simmons*, 120 Idaho at 676, 818 P.2d at 791. Such an investigative stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628 (1981); *Knapp*, 120 Idaho at 347, 815 P.2d at 1087. Put differently, an investigatory or *Terry* stop is justified under the Fourth Amendment if there is a reasonable and articulable suspicion that the person has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972); *Simmons*, 120 Idaho at 676, 818 P.2d at 791. In sum, the Idaho Supreme Court has held:

> An individual who is accosted by a police officer and has his freedom to walk away restrained has been seized. Not all seizures of the person need be justified by probable cause to arrest for a crime; a police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.

search and seizure. Thus, we are not persuaded by Ferreira's assertion that Idaho courts have held that the Fourth Amendment requires proba-

ble cause that a driver is in violation of I.C. § 18–8004 before field sobriety tests may be administered.

Such a seizure is justified under the Fourth Amendment if there is an articulable suspicion that the person has committed or is about to commit a crime.

*State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992) (citations omitted).

The factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds. *State v. Martinez,* 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct.App.1996). The Idaho Supreme Court has previously held that "[w]ithout question, the drunk driver is one of society's greatest concerns." *State v. Henderson,* 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988). The *Henderson* Court held that the state has a "vital interest in promoting public safety by reducing alcohol-related traffic accidents and by ensuring the fitness of drivers behind the wheel." *Id.* The state's interest in stopping drunk driving is "compelling," because protecting citizens from life-threatening danger is a "paramount concern." *Id.* at 296, 756 P.2d at 1060. Thus, drunk driving is a serious crime.

Field sobriety tests are, by their very definition, done in the "field" typically on the side of a public thoroughfare and are ordinarily performed contemporaneously with a traffic stop. In the instant case, upon stopping Ferreira for speeding, the officer noticed the odor of alcohol and inquired as to Ferreira's alcohol consumption that evening. After being informed that Ferreira had ingested two glasses of wine and a cognac, the officer requested that Ferreira exit the car and perform field sobriety tests. Those tests were performed immediately thereafter. Finally, although Ferreira testified that he did not believe he could refuse the request, that does not elevate the detention into a de facto arrest. In any investigative detention the individual is not free to leave; that element of compulsion is what distinguishes an investigative detention from a consensual encounter. *See Fry,* 122 Idaho at 102–03, 831 P.2d at 944–45. Therefore, we conclude that the administration of field sobriety tests following a traffic stop is but an investigative detention.

To determine whether a search conducted within an investigatory detention is reasonable and, therefore, constitutionally permissible, the Court must balance the state's interest in conducting the search against the level of intrusion into an individual's privacy that the search entails. *See State v. Reed,* 129 Idaho 503, 505, 927 P.2d 893, 895 (Ct.App.1996) (The permissibility of a particular law enforcement practice is judged by balancing its intrusion upon the individual's Fourth Amendment interests against its promotion of legitimate governmental interests .). As we have stated above, the state's interest in stopping drunk driving is compelling, and the protection of its citizens from life-threatening danger is of paramount concern. *Henderson,* 114 Idaho at 296, 756 P.2d at 1060. An individual's privacy is certainly intruded upon by the administration of field sobriety tests. However, the state's interest is overwhelming and outweighs the intrusion into a driver's privacy and, thus, we hold that field sobriety tests are reasonable methods of conducting an investigation, based on specific and articulable facts that a driver is operating his or her vehicle contrary to I.C. § 18–8004.

Moreover, this Court has previously held that the Fourth Amendment requires only reasonable suspicion that a driver is driving while under the influence before an officer may request a driver to perform field sobriety tests. *See State v. Pick,* 124 Idaho 601, 605, 861 P.2d 1266, 1270 (Ct.App.1993) (Field sobriety tests are a form of a *Terry* stop and, thus, when such tests were requested, the officer was required to have, and had, a reasonable, articulable suspicion that Pick was in physical control of a motor vehicle while under the influence of alcohol.); *State v. Jordan,* 122 Idaho 771, 775, 839 P.2d 38, 42 (Ct.App.1992) (Officers had reasonable, articulable suspicion that the driver may have been driving under the influence and, thus, were authorized to ask him to pull over and perform field sobriety tests.). Therefore, we hold again today, based on established precedent and thorough analysis, that the Fourth Amendment to the United States Constitu-

tion requires only that an officer possess reasonable suspicion that a driver is operating a vehicle contrary to I.C. § 18–8004 before field sobriety tests may be administered.

## B. Idaho Constitution

Ferreira next claims that the Idaho Constitution should require probable cause before an officer may request a driver to perform field sobriety tests. He contends that such a tests are "full-blown searches." Article I, Section 17 of the Idaho Constitution states, in relevant part, that the "right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated."

The language of Article I, Section 17 of the Idaho Constitution closely parallels that of the Fourth Amendment. This similarity in language, however, does not require this Court to follow United States Supreme Court precedent in interpreting our own constitution. "The reason is the federal and state constitutions derive their power from independent sources. It is thus readily apparent that state courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court. This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions."

*State v. Christensen,* 131 Idaho 143, 146, 953 P.2d 583, 586 (1998), *quoting State v. Newman,* 108 Idaho 5, 10, n. 6, 696 P.2d 856, 861, n. 6 (1985). In *State v. Cada,* 129 Idaho 224, 230, 923 P.2d 469, 475 (Ct.App.1996), this Court recognized that such independent state analysis does not mean that the Court will reach a result different from the United States Supreme Court; it only means that we are free to do so, if it is determined that a different rule better effectuates our counterpart Idaho constitutional provision.

Generally, like its Fourth Amendment counterpart, Article I, Section 17 of the Idaho Constitution prohibits unreasonable searches and seizures. *Simmons,* 120 Idaho at 676, 818 P.2d at 791. Warrantless searches are deemed to be "per se unreasonable" and the burden is upon the state to demonstrate that the search was carried out pursuant to one of the exceptions to the warrant requirement. *State v. Cook,* 106 Idaho 209, 214, 677 P.2d 522, 527 (Ct.App. 1984). A *Terry* stop is a recognized investigative method under the Idaho Constitution. *State v. Johns,* 112 Idaho 873, 877, 736 P.2d 1327, 1331 (1987) (Under *Terry* and Idaho law, limited stops can be made for investigative purposes.). Such an investigative stop is an "intermediate response" that allows an officer, who lacks probable cause to make an arrest, to *actively* investigate possible criminal behavior. *Cook,* 106 Idaho at 214, 677 P.2d at 527.

Ferreira relies on decisions of the Oregon and Colorado Supreme Courts in support of his contention that the Idaho Constitution should require probable cause before field sobriety tests may be administered. Ferreira cites *State v. Nagel,* 320 Or. 24, 880 P.2d 451 (1994), wherein the Oregon Supreme Court held that under both the Oregon and United States Constitutions, roadside field sobriety tests constitute a search and require probable cause that a driver is DUI before the tests may be conducted. *Id.* at 458. In *People v. Carlson,* 677 P.2d 310 (Colo.1984), the Colorado Supreme Court similarly held that roadside field sobriety tests are a "full" search and thus must be supported by probable cause under both the federal and state constitutions. In so holding, the *Carlson* Court stated that the "sole purpose of roadside sobriety testing is to acquire evidence of criminal conduct on the part of the suspect." *Id.* at 317. We disagree with the characterization of field sobriety tests made by the *Carlson* Court. Indeed, the *dual* purposes of roadside field sobriety tests are to *either* confirm *or* dispel the police officer's suspicion that the driver is operating his or her motor vehicle contrary to the law. Thus, if the individual performs the field sobriety tests in such a manner as to dispel the officer's suspicions, absent other

unique circumstances, the driver will be left to go on his or her way.

 Having adopted *Terry* and its progeny in this state under the Idaho Constitution, we find no reason to abandon that doctrine today. Additionally, it is "generally accepted that a driver stopped on reasonable suspicion of driving under the influence may be subjected to [ ] field sobriety test[s], consisting of examination of his mental and physical dexterity." 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 9.2(f), at 54 n. 146 (3d ed.1996). In *Hulse v. State, Dep't of Justice, Motor Vehicle Division,* 289 Mont. 1, 961 P.2d 75 (1998), the Montana Supreme Court determined that under both the federal and Montana constitutions, field sobriety tests, although searches, required only reasonable suspicion of intoxication before such tests could be administered. The *Hulse* Court stated:

> Because we recognize that field sobriety tests, like investigative stops, are important investigative tools used by police officers to determine whether probable cause for arrest exists, we also acknowledge that to require probable cause that an individual has been driving under the influence before allowing police officers to administer field sobriety tests would defeat the very purpose of these tests.

*Id.* at 86–87. We find the reasoning of the *Hulse* Court both compelling and sound. Moreover, in addition to Montana, at least fifteen other jurisdictions have adopted the rule that probable cause is not required before a law enforcement officer administers field sobriety tests. *See, e.g., State v. Superior Court,* 149 Ariz. 269, 718 P.2d 171, 176 (1986); *State v. Lamme,* 19 Conn.App. 594, 563 A.2d 1372, 1374 (1989), *aff'd* 216 Conn. 172, 579 A.2d 484 (1990); *State v. Taylor,* 648 So.2d 701, 703 (Fla.1995); *Dixon v. State,* 103 Nev. 272, 737 P.2d 1162, 1163–64 (1987); *People v. Califano,* 255 A.D.2d 701, 680 N.Y.S.2d 700, 701 (N.Y.App.Div.1998). Thus, *Nagel* and *Carlson,* cited by Ferreira, enunciate what is clearly a minority view.

 Furthermore, Ferreira's argument that an officer should be required to possess probable cause before field sobriety tests can be administered would render the "per se" section of I.C. § 18–8004 a virtual nullity. In Idaho, the legislature has seen fit to criminalize driving while under the influence in two distinct ways. Idaho Code Section 18–8004 states, in relevant part, that it "is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, *or* who has an alcohol concentration of 0.08 ... or more ... to drive or be in actual physical control of a motor vehicle." (Emphasis added.). Thus, I.C. § 18–8004 provides for one crime, with two alternative methods of proof. *See State v. Cheney,* 116 Idaho 917, 919, 782 P.2d 40, 42 (Ct.App.1989) (Discussing the former version of I.C. § 18–8004.). Field sobriety tests are a necessary investigative tool, for police officer who suspects that a driver has an alcohol level of .08 or greater but is not "under the influence of alcohol," to establish probable cause that the driver is violating the per se limit of .08 contained within I.C. § 18–8004.

We hold, therefore, that Article I, Section 17 of the Idaho Constitution requires only that a police officer possess reasonable suspicion that a person is driving in violation of I.C. § 18–8004 before field sobriety tests may be administered.

## C. Least Intrusive Means

 The investigative methods utilized during an investigative seizure should be the least intrusive means *reasonably* available to verify or dispel the officer's suspicion in a short period of time. *State v. Martinez,* 129 Idaho 426, 430, 925 P.2d 1125, 1129 (Ct.App. 1996). During appellate oral argument Ferreira asserted that field sobriety tests are not the least intrusive method that an officer can use to confirm or dispel his suspicion that the driver is driving while under the influence. Ferreira contended that a reasonable investigative method, when an officer suspects a driver is operating his or her vehicle while under the influence, would be to simply inquire further of the driver while the officer stands on the side of the road and the driver is seated in the vehicle. We disagree.

 In *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977),

the United States Supreme Court held that once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures. This rule has been followed in Idaho. *See Sprague v. City of Burley,* 109 Idaho 656, 664, 710 P.2d 566, 574 (1985). In *Mimms,* the Supreme Court focused on the danger posed to the officer from both the driver and passing traffic. *Mimms,* 434 U.S. at 110–11, 98 S.Ct. at 333–34, 54 L.Ed.2d at 336–37. Recently, the United States Supreme Court extended its holding in *Mimms* to passengers. *Maryland v. Wilson,* 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 47 (1997). The *Wilson* Court again focused on the danger posed to the officer during a lawful traffic stop in reaching its decision. *Id.* at 413, 117 S.Ct. at 885, 137 L.Ed.2d at 47. Based on the holdings of *Mimms* and *Wilson,* an officer can order the driver and/or the passenger out of a lawfully stopped vehicle. Thus, it stands to reason that when an officer suspects that the driver of a lawfully stopped vehicle is driving contrary to I.C. § 18–8004, the officer is not required to stand on the roadside and question the driver further while the driver remains seated inside the vehicle.

Additionally, Ferreira's own contention that there was no evidence that his motor skills were impaired while he was seated in the vehicle prior to the field sobriety tests, buttresses this Court's conclusion that field sobriety tests are the least intrusive means of effectively verifying or dispelling an officer's reasonable suspicion. The Hawaii Supreme Court has held that field sobriety tests are designed and administered to avoid the shortcomings of casual observation and are premised upon the relationship between intoxication and the externally manifested loss of coordination it causes. *State v. Wyatt,* 67 Haw. 293, 687 P.2d 544, 551 (1984). Field sobriety tests "essentially require a suspected driver to go through prescribed routines so his physical characteristics may be observed by the police." *Id.*

Thus, Ferreira's suggested "least intrusive means" of investigating a driver for DUI, by further questioning, is both unreasonable and potentially unreliable. Therefore, we hold that field sobriety tests are the least intrusive means *reasonably* available to verify or dispel the officer's suspicion in a short period of time that a driver is in violation of I.C. § 18–8004. *See State v. Jones,* 115 Idaho 1029, 1033, 772 P.2d 236, 240 (Ct.App.1989) (The request to perform field sobriety tests was a reasonable attempt by the officer to obtain information confirming or dispelling the officer's suspicions that the driver was driving while under the influence.).

### D. Basis for Field Sobriety Tests

Having determined that both the United States and Idaho Constitutions require reasonable suspicion that a driver is operating his or her vehicle while under the influence, or with an alcohol level in excess of .08, we turn to Ferreira's contention that the officer in the instant case did not possess reasonable suspicion that Ferreira was driving in violation of I.C. § 18–8004. Ferreira argues that the odor of alcohol and Ferreira's admission that he had two glasses of wine and a cognac prior to the traffic stop were insufficient to amount to reasonable suspicion to support the field sobriety tests. The reasonable suspicion standard requires less than probable cause, but more than mere speculation or instinct on the part of the officer. *State v. Naccarato,* 126 Idaho 10, 12, 878 P.2d 184, 186 (Ct.App.1994); *State v. Emory,* 119 Idaho 661, 664, 809 P.2d 522, 525 (Ct.App.1991). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the encounter. *Naccarato,* 126 Idaho at 12, 878 P.2d at 186; *Mason v. Dep't of Law Enforcement,* 103 Idaho 748, 750, 653 P.2d 803, 805 (Ct.App.1982).

In *Pick,* this Court held that the odor of alcohol on the driver's breath, the driver's slurred speech, and the driver's admitted alcohol consumption amounted to reasonable suspicion that the driver was under the influence and, thus, the administration of field sobriety tests was constitutionally proper. *Pick,* 124 Idaho at 605, 861 P.2d at 1270. Additionally, in *Jordan,* this Court similarly held that reasonable suspicion to believe a

**484**

driver was under the influence was established by information that the driver had been drinking, coupled with the driver's admission of drinking. *Jordan*, 122 Idaho at 775, 839 P.2d at 42. In the instant case, Ferreira was speeding, disregarding what he admittedly knew to be the speed limit in the area. The officer, while discussing the basis of the initial traffic stop, detected an odor of alcohol and then asked Ferreira if he had been drinking. Ferreira responded that while at dinner he had two glasses of wine and a glass of cognac. These facts are sufficient to establish reasonable suspicion that Ferreira was in violation of I.C. § 18–8004.

 Moreover, Ferreira's assertion that his speech was not slurred and his clothes were not disheveled does not affect the officer's reasonable suspicion that Ferreira was driving in violation of I.C. § 18–8004. As stated above, I.C. § 18–8004 provides for one crime with two alternative methods of proof—driving while under the influence of alcohol or driving with an alcohol level of .08 or more. *See Cheney*, 116 Idaho at 919, 782 P.2d at 42. Evidence that is relevant to the impairment theory is not necessarily relevant to the per se theory. *See State v. Andrus*, 118 Idaho 711, 713, 800 P.2d 107, 109 (Ct.App.1990). Therefore, the officer had reasonable suspicion, based on the totality of the circumstances, that Ferreira was driving his car in violation of I.C. § 18–8004 before the field sobriety tests were administered. Thus, the administration of the field sobriety tests was constitutionally sound.

### III.

### CONCLUSION

We hold that both the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution require reasonable suspicion that a driver is in violation of I.C. § 18–8004 before field sobriety tests can be administered. Further, we hold that field sobriety tests are the most reasonable, least intrusive method of confirming or dispelling an officer's suspicion. Finally, we hold that, in the instant case, the officer possessed reasonable suspicion that

Ferreira was driving in violation of I.C. § 18–8004 before administering the field sobriety tests. Therefore, the magistrate's order suspending Ferreira's driver's license due to his refusal to submit to a breath test, pursuant to I.C. § 18–8002, is affirmed.

Judge LANSING and Judge Pro Tem R.B. WOOD, concur.