32 P.3d 679

STATE of Idaho, Plaintiff–Appellant,

v.

William G. HOLLER, Defendant–Appellant.

No. 26070.

Court of Appeals of Idaho.

July 26, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Chief Judge.

William G. Holler appeals from his conviction for possession of a controlled substance, methamphetamine, challenging the district court's denial of his motion to suppress and the imposition of a prison term of seven years, with two and one-half years fixed. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 1999, at about 3:45 a.m., Mountain Home Police Officers Hernandez and Griggs were called to a residence in Mountain Home to investigate a citizen complaint of a suspected prowler. The complainant, Tabitha Miller, described the suspected prowler as a white male, with long hair and no shirt or shoes, who departed when she called out to him. It was approximately forty-five to fifty degrees outside that night. The officers proceeded to look about the area, and about fifteen minutes later they located a man, Holler, who fit Miller's description, walking away from a residence. The officers had observed the same man a couple of hours earlier wearing a shirt and shoes and looking for his dog.

On the later encounter Holler approached the officers with this hands in his pockets, appearing nervous and agitated. Hernandez told him to remove his hands from his pockets and Holler complied. While Officer Griggs was talking to Holler, he again shoved his hands in his pockets and had to be asked to again remove them. Officer Hernandez noticed a bulge in Holler's left front pocket and, concerned for his safety, patted him down for weapons. During the pat down, Officer Hernandez felt a hard metal object in Holler's pocket. He removed the object, which he discovered to be a brass pipe that appeared to be drug paraphernalia. Officer Hernandez admitted that he removed the object from Holler's pocket without permission, because it "felt to be like, maybe, a weapon." Also recovered from Holler's pocket was a clear plastic pocket change purse that contained four pills and a small ziplock baggie with a white powdery substance inside—which later tested positive for methamphetamine. Holler denied any knowledge of the change purse contents, saying that he had found the purse. Holler was arrested for possession of drug paraphernalia, a misdemeanor, and later charged with possession of a controlled substance, methamphetamine, a felony, pursuant to I.C. § 37-2732(c).

During the preliminary hearing, Hernandez testified to the above facts. After being arraigned in the district court, Holler filed a motion to suppress the evidence, asserting that the officers had no reasonable suspicion that Holler was committing a crime at the time the officers conducted the pat down search.

At the hearing on Holler's suppression motion, both parties relied upon the preliminary hearing testimony. Holler also testified that he had been at the KOA camp in Mountain Home when, at about midnight, his dog escaped from the rope attached to his truck. Holler got dressed and chased her down about four blocks away and tied her up to the back of his truck. At about 3 a.m. Holler noticed that his dog had escaped again. Wearing only a pair of jeans, Holler went out to look for his dog, giving chase when he thought he saw her. About three blocks from the KOA site, Holler saw two police officers and asked them to help him catch his dog. Holler said that the officers asked him if he had any weapons, and he said no, pulling his hands out of his pockets to show them that he had no weapons. Holler said that the officers, without his permission, immediately patted him down and pulled something out of his pocket.

On cross-examination, Holler admitted that the officers asked him to take his hands out of his pockets, but said that he only had to be asked once. Holler said that his pants pocket contained a two and one-half-inch, disassembled metal smoking pipe that could not have been mistaken for a weapon and which the officer removed without permission. On examination by the district court, Holler admitted that he might have walked through some people's yards in search of his dog. The state submitted no further evidence and the hearing was concluded.

Thereafter, the district court largely accepted the facts as asserted. The court ruled that the officers had reasonable suspicion of wrongdoing—possibly prowling—when they located Holler, shirtless and shoeless walking through people's yards at about 4 o'clock in the morning, and that the officers acted reasonably in frisking Holler for weapons and removing the contents of his pocket.

Therefore, the district court denied Holler's motion to suppress.

Holler entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress, and in exchange the state agreed to recommend a seven-year sentence, with two and one-half years fixed, to dismiss the misdemeanor charge, and to not file a persistent violator charge against Holler. At sentencing, the district court imposed a unified term of seven years with two and one-half years fixed. Holler appeals.

## II.

### STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we employ a bifurcated standard. *State v. Abeyta*, 131 Idaho 704, 708, 963 P.2d 387, 391 (Ct.App.1998). We accept the trial court's findings of fact that are supported by substantial evidence and freely review the application of constitutional principles to the facts as found. *Id.* The determination of whether a search is reasonable under the Fourth Amendment is a question of law over which we exercise free review. *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993).

## III.

### STOP AND FRISK

#### A. Applicable Law

Both Article 1, § 17 of the Idaho Constitution and the Fourth Amendment to the United States Constitution prohibit unreasonable searches and seizures. A warrantless search or seizure is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two inde-pendent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App.1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Terry*, 392 U.S. at 30, 88 S.Ct. 1868 at 1884–85, 20 L.Ed.2d 889 at 911; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. The lawfulness of a frisk is to be determined by the court, based upon an objective assessment of the circumstances that confronted the officer at the time of the frisk as to whether the individual may be armed and dangerous. *Babb, supra; Fleenor, supra.*

#### B. Stop And Frisk

The basic facts are uncontested. Here, the officers first encountered a fully dressed Holler around midnight, at which time Holler informed Officer Hernandez that he was looking for his runaway dog. At around 3:45 a.m., the officers responded to a call from Miller regarding a strange person "going through lawns." When the officers spoke with Miller, she informed them that the suspicious person was a white male with long hair, dressed in blue jeans and without shoes or shirt. About fifteen minutes later, the officers observed Holler, a white male with long hair dressed only in a pair of blue jeans, walking from the direction of a residence at a street corner. Holler, with his hands in his pants pockets, approached the officers and asked for help finding his dog. At this point the officers were observing a person they had previously encountered in more appropriate dress, again claiming to be looking for his dog, and who matched the description of Miller's suspicious person and who appeared to be coming from the yard of a nearby home. Based upon these facts, the officers had an objective basis for stopping Holler and inquiring about his conduct.

Holler argues that his explanation of what he was doing at that time of night—looking for his recently runaway dog—dis-

pelled the officers' reasonable suspicion of wrong doing on his part. We disagree. As stated above, whether an officer had reasonable suspicion, justifying a *Terry* stop, is based upon a review of the totality of the circumstances. *See DuValt*, 131 Idaho at 553, 961 P.2d at 644. Thus, Holler's explanation of his conduct was but one circumstance of many before the officers. The officers were under no obligation to believe Holler's explanation. Accordingly, we conclude that a brief detention for the purpose of asking about his conduct that morning was reasonable under the totality of the circumstances.[1]

 Holler challenges Officer Hernandez's weapons frisk. Independent of any *Terry* stop, an officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868 at 1883, 20 L.Ed.2d 889 at 909; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb, supra; Fleenor, supra. See also State v. Muir*, 116 Idaho 565, 567–68, 777 P.2d 1238, 1240–41 (Ct.App.1989). The reasonableness of a frisk under *Terry* is a question of law. *State v. Burgess*, 104 Idaho 559, 561, 661 P.2d 344, 346 (Ct.App. 1983). While the trial court's conclusions should not be lightly disregarded, it is this Court's responsibility to measure the facts as found by the district court against the constitutional standard of reasonableness. *Id.*

 If an officer can point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant a frisk for weapons, then such a frisk will not violate the Fourth Amendment. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868 at 1879–80, 20 L.Ed.2d 889 at 905–06. The district court found that, in light of the visible bulge

in Holler's left front pocket and his apparent nervousness and agitation when twice asked to remove his hands from his pockets, together with the unusual circumstances of the encounter, Hernandez had a reasonable basis for suspecting that Holler might have a weapon and acted reasonably in dispelling that suspicion by patting Holler down. The district court's factual findings in this case, that there were articulable facts and inferences which led Officer Hernandez to reasonably believe that Holler might be armed and presently dangerous, are based upon substantial and competent evidence. Furthermore, the district court's conclusion of reasonableness is consistent with our Fourth Amendment jurisprudence. Therefore, we hold that Officer Hernandez's frisk of Holler was constitutionally justified.

## C. Scope Of Frisk

 Holler also argues that Officer Hernandez exceeded the permissible scope of a *Terry* frisk when he removed the clear plastic change purse from Holler's pants pocket after retrieving the four to five inch metal drug pipe from the same pocket. We disagree. As explained by the United States Supreme Court: "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2565, 65 L.Ed.2d 633, 645–46 (1980); *see also State v. Crabb*, 107 Idaho 298, 304, 688 P.2d 1203, 1209 (Ct.App. 1984). Once officer Hernandez felt a four to five-inch metal object that he believed might be a weapon in Holler's pocket and removed it to find that it was a brass pipe with suspected marijuana residue, Hernandez's reasonable suspicion regarding a weapon was replaced by probable cause to believe that Holler possessed drug paraphernalia, a misdemeanor under I.C. § 37–2734A. Holler was subsequently arrested for possession of drug paraphernalia. Accordingly, once the officer had probable cause to arrest Holler, the removal of the clear plastic change purse

---

1. We note that a person need not necessarily be suspected of criminal activity before an officer

may lawfully conduct a limited search for weapons. *Fleenor*, 133 Idaho at 556, 989 P.2d at 788.

from his pants pocket was justifiable as a search incident to arrest. *State v. Kerley,* 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct.App. 2000).

## IV.

## EXCESSIVE SENTENCING

Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger,* 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead,* 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992). A sentence is reasonable if at the time of imposition it appears necessary to achieve "the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez,* 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

Holler was charged with and pled guilty to possession of a controlled substance, methamphetamine. The maximum punishment for possession of a controlled substance, methamphetamine, is seven years and/or a fine of $15,000. I.C. § 37–2732(c). Holler's prior criminal record reflects seven prior felony offenses for escape, theft, possession of drugs with intent to deliver, burglary, and possession of stolen property. Additionally, Holler has a lengthy record of misdemeanor offenses. Holler began using drugs at the age of nine, with his drugs of choice being heroin, methamphetamine and inhalants. He admits being addicted to methamphetamine for the last five years and never wished to stop until the instant offense.

Holler completed a drug treatment program in 1982 and immediately went back to using drugs. Holler reports having skills in drywall installation and roofing, but his employment history reflects a total of less than three weeks of employment since 1991. He claims that he could make more money selling drugs than in construction. Holler was on probation in Washington when he committed the instant offense. In light of the foregoing, the presentence investigator concluded that Holler was not a suitable candidate for probation.

At sentencing, the district court concluded that Washington's efforts to encourage Holler to rehabilitate himself had failed and that Holler was not a candidate for probation in Idaho. Noting the risk of reoffense given Holler's addiction and long criminal record, the district court imposed a sentence of seven years with two and one-half years fixed. That sentence will be affirmed.

## V.

## CONCLUSION

The district court correctly denied Holler's motion to suppress. Holler's conviction for possession of methamphetamine and his sentence of seven years, with two and one-half years fixed, are affirmed.

Judge LANSING and Judge PERRY, concur.