54 P.3d 464

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael A. MADDOX, Defendant–Appellant.**

**No. 27372.**

Court of Appeals of Idaho.

June 13, 2002.

Review Denied Sept. 24, 2002.

Molly J. Huskey, Interim State Appellate Public Defender; Craig Harrison Durham, Deputy Appellate Public Defender, Boise, for appellant. Craig Harrison Durham argued.

Hon. Alan G. Lance, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

LANSING, Judge.

Michael A. Maddox was stopped by a law enforcement officer as Maddox was driving his automobile up a motorcycle trail in an undeveloped foothill area. During the stop, the officer saw drug paraphernalia in the vehicle in plain view and ultimately arrested Maddox for possession of a controlled substance. On Maddox's motion to suppress evidence from the stop, the district court held that the stop was justified as a community caretaking act, and therefore denied the motion. We conclude that the district court erred in denying the suppression motion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are not in dispute and were found by the district court as follows:

On July 3, 2000 [at about 8:00 a.m.], Officer Reyes of Gem County Sheriff's Office was on patrol in the foothills in an area known in Gem County as Cycle Park. While parked on Jackass Gulch Road, Officer Reyes was met by a driver and Mr. Maddox in a later 1970's or early 1980's Firebird or Camaro type car. The two explained to the officer that they were searching for a friend [who was] on foot. After speaking with the officer, Mr. Maddox and his driver proceeded to an undeveloped area known as Cycle Park.

Officer Reyes, concerned that there may be a developing search and rescue, decided to follow the car as it drove east on a dirt road. As Reyes drove in the Cycle Park, he noticed the Maddox car parked on a hillside, about one-quarter of a mile above the road. Believing that Maddox and his driver had found their friend, Officer Reyes proceeded towards the Maddox car in concern of injury. Officer Reyes was also concerned with the rugged terrain and wanted to prevent having to call a tow truck. Officer Reyes was familiar with the rough terrain in this area.

As the Officer approached the Maddox car, the car moved further up a motorcycle trail. Officer Reyes turned on his overhead lights in an attempt to prevent the Maddox car from becoming stuck further up the trail. In response, the vehicle stopped, and Maddox stepped out as the car's driver. Officer Reyes asked if they had found their friend, to which they responded, "no." Mr. Maddox informed the Officer that he was not supposed to be driving. Officer Reyes was unconcerned as [Maddox] was not driving on a public road, and continued to question about the missing friend. During such questioning, Officer Reyes observed signs that Mr. Maddox might be under the influence of alcohol or marijuana. Officer Reyes then asked Mr. Maddox if he could search the vehicle. Mr. Maddox refused, but admitted that there was a firearm in the vehicle and that he was not supposed to be around firearms. As Officer Reyes took steps to secure the firearm, he noticed a baggie and a marijuana pipe sitting on the dashboard of the vehicle. Mr. Maddox admitted ownership of the pipe and was arrested for possession of a controlled substance. Marijuana and methamphetamine were later [determined to be] the contents of the baggie.

Maddox was charged with misdemeanor possession of marijuana, Idaho Code § 37–2732(c)(3), and possession of methamphetamine, I.C. § 37–2732(c)(1). He moved to suppress the evidence found by Reyes. In denying the motion, the district court held Officer Reyes had lawfully stopped Maddox's

vehicle pursuant to Reyes' community caretaking function. Maddox subsequently pleaded guilty to the charged offense, but reserved his right to appeal the denial of his suppression motion.

## II.

## DISCUSSION

In reviewing a decision on a motion to suppress evidence, we defer to the trial court's findings of fact that are supported by substantial evidence but freely review the application of constitutional principles to the facts as found. *State v. Holler*, 136 Idaho 287, 291, 32 P.3d 679, 683 (Ct.App.2001); *State v. Evans*, 134 Idaho 560, 563, 6 P.3d 416, 419 (Ct.App.2000). In this case, the factual findings of the district court are not contested by either party, and we therefore focus our review upon whether Reyes' actions were constitutionally permissible.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Its purpose is to impose a standard of reasonableness upon the exercise of discretion by government agents and thereby safeguard the individual's privacy and security against arbitrary invasions. *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660, 667–68 (1979). The stop of a vehicle constitutes a seizure of its occupants and is therefore subject to Fourth Amendment restraints. *Id.; State v. Schumacher*, 136 Idaho 509, 37 P.3d 6 (Ct.App.2001). When the reason for a stop is to investigate possible criminal activity, it must be based upon a reasonable, articulable suspicion that the person stopped has been or is about to be engaged in criminal behavior. *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992); *State v. Fry*, 122 Idaho 100, 103, 831 P.2d 942, 945 (Ct.App.1991). However, the investigation of criminal activity is not the only justification for a limited detention of a person. A detention is constitutionally permissible if it is reasonably conducted in furtherance of the government agent's community caretaking function. *See Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Matter of Clayton*, 113

Idaho 817, 818, 748 P.2d 401, 402 (1988); *State v. Mireles*, 133 Idaho 690, 991 P.2d 878 (Ct.App.1999). The community caretaking function arises from the duty of police officers to help citizens in need of assistance, *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997), and it is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 715.

In this case, by activating the overhead lights on his patrol car to signal Maddox to stop, Officer Reyes effectuated a seizure of Maddox and his passenger. *See* I.C. § 49–625; *Mireles*, 133 Idaho at 692, 991 P.2d at 880. It is not contended that this stop was initiated for the purpose of criminal investigation. Therefore, the question presented is whether this seizure was justified by community caretaking considerations.

In analyzing claims that community caretaking justified a detention, Idaho courts apply a totality of the circumstances test. *Wixom*, 130 Idaho at 754, 947 P.2d at 1002. "[T]he constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances." *Id.* (quoting *State v. Waldie*, 126 Idaho 864, 867, 893 P.2d 811, 814 (Ct.App.1995)). The reasonableness of an officer's action in pursuit of community caretaking is to be "[t]ested upon practical considerations of everyday life on which reasonable persons act...." *Matter of Clayton*, 113 Idaho at 818, 748 P.2d at 402. There must be a sufficient public interest furthered by the detention to outweigh the degree and nature of the intrusion upon the privacy of the detained citizen. *Mireles*, 133 Idaho at 693, 991 P.2d at 881. In applying these standards, our Supreme Court has held that community caretaking justified an officer in investigating when he saw a vehicle in a parking lot at 1:30 in the morning with its lights on and motor running, with the driver slumped forward. *Matter of Clayton*, 113 Idaho at 818, 748 P.2d at 402. However, community caretaking cannot be invoked to justify the detention of a citizen that is prompted merely by an officer's curiosity, a subjective but unsubstantiated suspicion of

criminal activity, or even an unwarranted concern that help might be needed. Thus, the Idaho appellate courts have held that the community caretaking doctrine did not validate the detention of occupants of a vehicle that had moved forward a few feet, then backward, then forward again in a parking space of a parking lot and then jerked to a stop, where the officers did not perceive a medical emergency or other exigency but harbored subjective suspicions that the driver was connected with recent burglaries, *State v. Fry*, 122 Idaho 100, 104, 831 P.2d 942, 946 (Ct.App.1991); or the stop of a motorist passing by an accident scene long after the accident so the officer could inquire whether the occupants had any information about the accident, *Wixom*, 130 Idaho at 754, 947 P.2d at 1002; or the detention of an individual standing by a parked vehicle at 2:15 a.m. approximately 300 feet away from a lumber yard where, earlier in the evening, police had received a report of someone shooting out lights, *State v. Osborne*, 121 Idaho 520, 526, 826 P.2d 481, 487 (Ct.App. 1991); or the detention of individuals sitting in a car lawfully parked on an unimproved pullout after dark in the winter on the officers' subjective belief, unsupported by any evidence, that the vehicle might have run off the road. *State v. Schmidt*, 137 Idaho 301, 47 P.3d 1271 (2002).

In the case before us, the totality of the circumstances presented to Officer Reyes shows no compelling need to provide assistance nor any other public interest sufficiently served by the stop to legitimize the detention of Maddox. The only justification offered by Officer Reyes was prevention of the possibility that Maddox would get his vehicle stuck if he drove farther up the motorcycle trail. There was no evidence that the trail presented a hidden danger not apparent to Maddox or that his driving on the trail created a risk of a vehicle rollover, other serious accident or danger to the vehicle's occupants. Although Maddox's decision to drive an automobile on a dirt motorcycle trail may not have been particularly wise, so far as can be perceived from the evidentiary record, it created no risk of harm sufficient to warrant Officer Reyes' intrusion. The community caretaking function does not allow officers to seize individuals where no serious harm is threatened merely on a belief that the individual's decisions or actions are unsound. In addition, Officer Reyes' basis for the stop was speculative and anticipatory, a concern about something that *might* happen *if* Maddox himself did not perceive the danger of getting stuck and stop before entering onto that part of the motorcycle trail that would pose the risk. Community caretaking justifies a detention only if there is a present need for assistance. Allowing officers to conduct community caretaking stops whenever they anticipate that a citizen might be about to embark upon an unwise venture would present far too great an opportunity for pretextual stops and far too great an imposition on the privacy interests of our citizenry to comport with the Fourth Amendment.

The State suggests that Officer Reyes' action was warranted by concern for the "missing" pedestrian. We disagree. First, the officer did not testify that the reason for the stop was a belief that Maddox and his passenger needed help to find their friend-he said that his motive was to warn them about the hazard of driving up the motorcycle trail. Second, there is no evidence that the officer believed that the friend on foot was missing, lost, overdue or in any sort of peril. So far as revealed by the evidence, the occupants of Maddox's car had told the officer only that they had lost track of a friend who was on foot and they were looking for him. They did not ask for the officer's help to find their friend; they merely inquired if the officer had seen him. Finally, when Reyes approached the Maddox vehicle in his patrol car, Maddox began driving away. In view of that action, it would not have been reasonable for the officer to believe that the occupants of the Maddox vehicle needed his assistance to search for their friend.

Finally, the State contends that the validity of this stop is supported by this Court's decision in *Mireles*, where we held that an officer's use of overhead lights, though technically creating a seizure, may serve legitimate purposes other than showing authority to effect a detention of a motorist. The State's reliance on *Mireles* is misplaced. In

that case, an officer saw a driver pull his vehicle to the shoulder of the road and stop, with half of the vehicle still in the traffic lane, late at night. Intending to determine whether the motorist needed assistance, the officer pulled his patrol vehicle to the side of the road nearby and then activated his overhead lights. Although the officer did not cause the driver to stop, when the officer turned on his overhead lights, he effectuated a *de facto* detention that prevented the driver from leaving. *See* I.C. § 49–625. In *Mireles,* the officer could have performed his community caretaking purpose of determining whether the driver needed assistance by simply stopping and making an inquiry; there was no need for a detention. Therefore, the question in *Mireles* was whether the officer's use of the overhead lights was unjustified and transformed what could have been conducted as a voluntary, consensual interaction into an unlawful detention. We held that it did not under the specific circumstances of that case because use of the lights at the late-night roadway stop served important purposes other than detaining the motorist, including warning oncoming drivers and conveying to the vehicle occupant that the person stopped behind him was a police officer and not someone posing a threat.

In the present case, no such ancillary purposes for use of the overhead lights exists. Officer Reyes testified that he turned on his overhead lights for the purpose of stopping Maddox; he offered no other reason. Maddox was stopped in an off-road location where there was no passing traffic that needed to be warned, and the encounter occurred during daylight hours while Maddox could see Officer Reyes' marked patrol car. Therefore, our holding in *Mireles* has no application here.

The totality of the circumstances does not show a community caretaking justification for Officer Reyes' decision to stop Maddox. Consequently, this stop was a seizure that violated the Fourth Amendment.

The order of the district court denying Maddox's suppression motion is reversed.

Chief Judge PERRY concurs.

Judge GUTIERREZ Dissenting.

I respectfully dissent. I am in general accord with the constitutional analysis articulated in the majority opinion in the area of the Fourth Amendment, but would reach a different conclusion under the totality of the circumstances.

The facts identify a situation that developed and called for Officer Reyes to take action in what might involve injury to an unknown person. Reyes first was approached by Maddox and another individual who indicated that they were searching for a friend that was on foot. Considering this information, along with the time of day involved and the isolated area lacking in utilities, services or traffic, Reyes reasonably believed a search and rescue might be at hand. Reyes' concern for the missing friend was heightened when he later came upon the car in which Maddox had been traveling earlier and saw it positioned on a hillside, an area denoted as Cycle Park and involving rugged terrain. Reyes believed the friend had been found, perhaps with injury. He approached the Maddox car, and the car proceeded farther up a motorcycle trail. Reyes, taking into account the type of vehicle involved, a 1970s or early 1980s Firebird or Camaro type car and the rough terrain, became concerned that the vehicle would get stuck on the trail. It was reasonable for the officer to anticipate this problem as he was familiar with the difficulties the area posed for non-four-wheel-drive vehicles and especially those having little clearance, such as the Maddox car.

Reyes turned on his overhead lights signaling the Maddox vehicle to stop. Approaching and questioning Maddox, Reyes was primarily concerned for the missing friend and queried Maddox on this, despite Maddox's disclosure that he was not supposed to be driving. As it turned out, the friend had not been located and the vehicle did not get stuck.

Considering the totality of the circumstances, it was reasonable for Reyes in this instance to be concerned for citizen injury and vehicle problems. The fact that neither resulted does not remove the situation from the community caretaking responsibilities en-

gaged in by law enforcement officers. Furthermore, the parties do not contend that the stop was initiated for the purpose of criminal investigation. Here, in my opinion, the public interest for safety of persons and property outweighed the limited intrusion of stopping the Maddox vehicle. Accordingly, I would uphold the constitutional validity of the stop and the denial of Maddox's motion to suppress.