**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 43401 & 43675**

| | | |
|---|---|---|
| **SHELBY GENE WILLSON,** | ) | **2016 Unpublished Opinion No. 460** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed: April 4, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **IDAHO TRANSPORTATION** | ) | **THIS IS AN UNPUBLISHED** |
| **DEPARTMENT,** | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| **Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jay P. Gaskill, District Judge.

Decision of the district court, acting in its appellate capacity, affirming the administrative suspension of driver's license, <u>affirmed</u>.

Blewett, Mushlitz, Hally, LLP; Jonathan D. Hally, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Edwin L. Litteneker, Special Deputy Attorney General, Lewiston, for respondent.

---

HUSKEY, Judge

Shelby Gene Willson appeals from the district court's decision, upon judicial review, affirming the Idaho Transportation Department's (ITD) order suspending his driver's license. Willson asserts there was insufficient legal cause to investigate him for suspicion of driving under the influence and, therefore, the arrest and evidentiary test were conducted in violation of his constitutional rights. For the reasons set forth below, we affirm.

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The record before the hearing officer establishes that a law enforcement officer was dispatched to Willson's home after a family member reported that Willson was potentially suicidal. This report was based on text messages the family member received from Willson and the family member's subsequent inability to locate Willson. The family member described the

1

vehicle Willson was driving. Willson was not home when the officer arrived so the officer parked down the road and waited. Several minutes later, a vehicle matching the description of Willson's vehicle drove up to Willson's home and parked in Willson's driveway. The officer contacted the driver, who was Willson. The investigating officer asked Willson if there were any weapons on Willson or in the truck. Willson confirmed that he had a pocket knife and a Leatherman tool in his pocket and guns in the vehicle. The officer then had Willson sit on the tailgate of the pickup to discuss whether Willson was suicidal. Willson said that he was not suicidal, but that he was very angry that his girlfriend had moved out of the home with his newborn child that morning, which was the impetus for the text messages. The officer noticed the smell of alcohol and asked Willson if he had been drinking. Willson admitted to drinking before arriving home.

By this time, a supervising officer arrived. The investigating officer consulted with his supervisor about how to handle the situation. The investigating officer was concerned about Willson being angry and having the weapons. The investigating officer also mentioned that he smelled alcohol when talking to Willson, but did not notice slurred speech or other indicators of intoxication. The supervising officer told the investigating officer he could proceed with a driving under the influence of alcohol (DUI) investigation or commit Willson if the officer believed Willson was a danger to himself or others. Because the officer had observed Willson driving in combination with Willson's admission that he had been drinking, the officer began investigating a DUI offense. Willson failed the field sobriety tests administered by the officer, and he was arrested on suspicion of driving under the influence. An evidentiary breath test indicated a blood alcohol content (BAC) of .171 and .169.

As a result of the failed BAC test, Willson's license was administratively suspended by ITD for a period of ninety days. At Willson's request, a hearing was held and the hearing officer issued findings of fact, conclusions of law, and an order upholding the license suspension. The hearing officer determined the officer had legal cause to make contact with Willson due to the report that Willson may be suicidal. In addition, the hearing officer determined the officer had legal cause to believe Willson violated Idaho Code § 18-8004 because the officer established Willson's control of a motor vehicle, along with the indicators of alcohol use. Willson filed a petition for judicial review with the district court. The district court affirmed the decision of the

hearing officer because there were substantial facts in the record to support the hearing officer's order. Willson appeals.

## II.

## ANALYSIS

The administrative license suspension (ALS) statute, I.C. § 18-8002A, requires ITD to suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer designated by ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State*, *Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

> (a) The peace officer did not have legal cause to stop the person; or
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
> (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

An ITD administrative hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Wernecke v. State, Idaho Transp. Dep't*, 158 Idaho 654, 657, 350 P.3d 1031, 1034 (Ct. App. 2015).

The Idaho Administrative Procedures Act (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court

3

acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine Cty., ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, it shall be set aside and remanded for further proceedings as necessary. I.C. § 67-5279(3).

At issue in this appeal are Willson's claims that the hearing officer incorrectly determined there was legal cause pursuant to I.C. § 18-8002A(7)(a) and (b). Additionally, Willson argues the officer did not have legal cause to make contact with Willson or, in the alternative, even if the officer had legal cause to make the initial contact, there was no legal cause for the officer to believe Willson was driving under the influence of alcohol until after the officer had unreasonably extended the initial stop.

## A. Legal Cause to Initiate Contact With Willson

Willson does not claim the hearing officer's decision exceeded the agency's authority or was arbitrary, capricious, or an abuse of discretion. Instead, Willson argues the evidence does not support a finding that the officer had legal cause to make contact with him as required by I.C. § 18-8002A(7)(1). Typically, a traffic stop by an officer constitutes a seizure of the

4

vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

In addition, law enforcement officers are permitted to make contact with citizens during the course of their community caretaking function. *State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002). This ability to initiate contact with citizens arises out of an officer's duty to respond to calls for assistance and to otherwise help citizens. *State v. Kelly*, 158 Idaho 862, 866, 353 P.3d 1096, 1100 (Ct. App. 2015). This function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Maddox*, 137 Idaho at 824, 54 P.3d at 467. When a citizen is detained in the course of an officer exercising this duty, that detention will be evaluated under the totality of the circumstances test and the reasonableness of the detention will be "[t]ested upon practical considerations of everyday life on which reasonable persons act. . . ." *Id.* (quoting *Matter of Clayton*, 113 Idaho 817, 818, 748 P.2d 401, 402 (1988)).

Willson challenges the hearing officer's determination that the law enforcement officer's actions were justified because the officer was responding to a citizen report that Willson was suicidal when upon contact, Willson informed the officer that Willson was not suicidal. The officer was within his community caretaker function to inquire beyond Willson's initial assertion to ensure Willson's safety, including inquiring about any weapons.

5

The hearing officer found, and the findings are supported by the record, that the officer, in response to the request to check on Willson's safety, confirmed Willson's identity and then conducted an investigation into Willson's current situation and mental status, including determining whether Willson had access to any weapons. The hearing officer correctly concluded the officer had legal cause to make contact with Willson as a function of the officer's duty to respond to the citizen's call for assistance in locating and ensuring Willson's safety. Willson has not shown by a preponderance of evidence that the officer lacked legal cause to initiate contact with Willson. To the extent Willson argues there is not substantial evidence, we disagree. Thus, we affirm the hearing officer's determination that there was legal cause for the officer to make contact with Willson.

**B.      Legal Cause to Believe Willson Was Driving Under the Influence**

The second issue raised by Willson is whether the hearing officer erred in determining there was legal cause for the officer to suspect him of driving under the influence. He argues that even if the officer had legal cause to initiate contact, the officer did not have legal cause to extend the interaction in order to develop a suspicion that Willson was under the influence of alcohol and to conduct the DUI investigation. The State argues that any alleged irregularities in the underlying DUI investigation are neither relevant to the review, nor do they provide a ground to set aside an agency decision.

Idaho Code § 18-8002A(7)(2) requires a hearing officer to determine whether an officer has "legal cause to believe that the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code." The hearing officer determined the law enforcement officer had legal cause to believe Willson was in actual physical control of a motor vehicle while under the influence of alcohol during the initial community caretaker contact. There is substantial evidence supporting this determination.

When the officer was parked down the road by Willson's residence, he observed a vehicle previously identified as Willson's driving on the road and into Willson's driveway. When the officer made contact, the driver, Willson, was sitting in the driver's seat. During the course of the conversation with Willson to determine whether Willson was a danger to himself or others, the officer smelled the odor of alcohol. When the officer asked if Willson had consumed alcohol, Willson confirmed that he had. While the officer did not notice any slurred speech, the

6

smell of alcohol and Willson's admission of consuming alcohol were a sufficient basis to inquire further and to administer field sobriety tests to determine Willson's intoxication level. The field sobriety tests and the evidentiary breath test confirmed that Willson was intoxicated beyond the legal limit. These factual findings are supported by the record.

Although Willson argues the officer did not have reasonable suspicion that Willson was impaired until after the community caretaking investigation terminated, that factual assertion was considered and rejected by the hearing officer. The hearing officer specifically found, "Based on the sequence that was set forth in Exhibit 5, a rational inference can be made that [the deputy] deduced Willson was impaired when he initially interviewed Willson." Additionally, the hearing officer found, "During [the deputy's] community care function, [he] observed competent evidence that Willson was impaired while Willson had been in actual physical control of a motor vehicle." As to any other outstanding factual issues, the hearing officer held, "Conflicting facts, if any, were considered and rejected in favor of the foregoing cited facts." Thus, the hearing officer reviewed all of the evidence and rejected Willson's factual assertion. We are not in a position to second guess the hearing officer's factual findings where, as here, there is substantial supporting evidence. So, we affirm the hearing officer's decision that there was legal cause to believe Willson was driving under the influence during his initial conversation with Willson.

## III.
## CONCLUSION

Willson has failed to meet his burden to show the hearing officer erred in determining the officer had legal cause to initiate contact with Willson following the report that Willson was suicidal. Further, Willson has not met his burden to show the hearing officer erred in determining the officer had legal cause to believe Willson was operating a motor vehicle while under the influence of alcohol. For the reasons set forth above, we affirm the district court's decision upon judicial review affirming the hearing officer's order suspending Willson's driver's license.

Judge GUTIERREZ and Judge GRATTON **CONCUR**.