**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47396**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **Filed: March 10, 2021** |
| Plaintiff-Respondent, ) | |
| ) | **Melanie Gagnepain, Clerk** |
| v. ) | |
| ) | **THIS IS AN UNPUBLISHED** |
| GREGORY WADE TOWNER, SR., ) | **OPINION AND SHALL NOT** |
| ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for possession of a controlled substance, methamphetamine, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Gregory Wade Towner, Sr., appeals from a judgment of conviction entered upon a jury verdict finding him guilty of possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c)(1). On appeal, Towner argues the district court erred in denying his motion to suppress evidence of methamphetamine that was found in his pocket after an officer placed Towner in protective custody. Because the officer's actions were reasonable under the community caretaking function, the district court did not err when it denied Towner's motion to suppress. The judgment of conviction is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement received a call from the group home at which Towner had been residing requesting a welfare check on Towner. Towner had left the group home and staff there was

1

concerned that Towner was using illegal substances and was a threat to himself because he was out on his own. Officers attempted to locate Towner but were unsuccessful.

A few days later, Officer Johns responded to a report of a man on the side of the road who appeared to be hallucinating. Officer Johns pulled into a nearby gas station parking lot and saw Towner, who he recognized from prior interactions, standing alone on the side of the road. Officer Johns observed Towner yelling at the sky and making gestures towards the air, as if he was arguing with someone. Officer Johns got out of his patrol car and approached Towner. As he did so, Towner attempted to step into the street without checking for traffic. When Officer Johns made contact with Towner, Towner claimed he was covered in wires that were going to send him to hell. Towner told Officer Johns that he was not taking his medications and suggested that "maybe [he] could go to the hospital." Towner subsequently said he might not need to go to the hospital and asked Officer Johns to give him a ride to his truck so he could go to Arizona or to a friend's house. Officer Johns asked Towner where he was staying, and Towner said he had been evicted from his prior residence and that he looked into staying at a motel but they were full.

Based on Towner's behavior, Officer Johns believed Towner was hallucinating and was a threat to himself. Officer Johns placed Towner in protective custody to take him to the hospital and conducted a pat-down search to ensure Towner did not have access to weapons or items that could be used to harm himself, Officer Johns, or hospital staff. During the search, Officer Johns felt a plastic object in Towner's pocket that he believed to be a replacement razor blade with a plastic cover on it. Officer Johns removed the object and discovered it was a plastic bag containing methamphetamine. Officer Johns placed Towner in the patrol car and drove him to jail instead of the hospital.

Towner was charged with possession of a controlled substance, methamphetamine, with a persistent violator enhancement. He filed a motion to suppress the methamphetamine, arguing that Officer Johns' warrantless seizure and search of Towner was not justified under any recognized exception to the warrant requirement and, therefore, violated his Fourth Amendment right against unreasonable search and seizure. The State opposed the motion, arguing that Officer Johns' conduct fell within his community caretaking function.

At the hearing on the motion, Officer Johns testified that he was trained to take an individual into protective custody if the person is "a threat to themselves or the general public or gravely disabled." He explained that taking an individual into custody in that context is done

2

pursuant to statute and that the "confines of that statute might delineate whether or not [the officer] can bring them into protective custody," but did not specify which statute he was referring to. The State argued that under I.C. § 39-307A, which allows officers to take reasonable steps to protect themselves when taking an individual incapacitated by alcohol or drugs into protective custody, Officer Johns acted reasonably by searching Towner to ensure he had no hazardous items on his person before placing him in the patrol car.

Towner argued Officer Johns' conduct was not justified under I.C. §§ 66-329 or 66-317. Towner argued that pursuant to statute, Officer Johns was required to find that Towner was a danger to himself or others or was gravely disabled before taking him into protective custody. Towner asserted that because he posed no danger to himself or others, and was not gravely disabled as defined in I.C. § 66-317, Officer Johns was not permitted to take Towner into protective custody.

The district court found I.C. § 39-307(a) irrelevant because Officer Johns believed Towner was hallucinating due to mental health issues, rather than due to the influence of alcohol or drugs. Further, the court found it did not need to consider I.C. §§ 66-326 or 66-317 in its analysis to determine if the community caretaking function applied. Based on the totality of the circumstances, the district court found the seizure to be a reasonable exercise of Officer Johns' community caretaking function. Next, the district court found the search was reasonable under the community caretaking function because Officer Johns conducted the search to determine whether the object in Towner's pocket was a weapon and because the object could have provided insight as to why Towner was hallucinating.

The case proceeded to trial and a jury found Towner guilty of possession of a controlled substance. The district court declared a mistrial on the persistent violator enhancement and imposed a determinate seven-year sentence, suspended the sentence, and placed Towner on probation. Towner timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts,

3

weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Towner argues the district court erred by ignoring the requirements set forth in I.C. § 66-326(1) that must be met before an officer is permitted to take a person into protective custody due to mental illness. The State contends that this argument is not preserved for our review because Towner did not cite I.C. § 66-326(1) to the district court.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). To properly preserve an issue for appellate review, both the issue and the party's position on the issue must be raised before the trial court. *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019). So long as a substantive issue is properly preserved, a party's appellate argument may evolve on appeal. *Id.* at 224, 443 P.3d at 238.

Although I.C. §§ 66-329 and 66-326 are related, it is clear from the record that Towner was referring to I.C. § 66-326, but mistakenly cited I.C. § 66-329 in support of his motion to suppress. Idaho Code § 66-329 delineates judicial procedure for having an individual involuntarily committed to the department of health and welfare for mental health treatment. Idaho Code § 66-326(1) permits an officer to take a person into protective custody if the officer has reason to believe the person is gravely disabled due to mental illness or the person's continued liberty poses an imminent danger to that person or others. Both Towner and the State argued the relevant language of I.C. § 66-326(1) before the district court and elicited testimony from Officer Johns that was consistent with the language of I.C. § 66-326(1). Officer Johns testified that he was trained to take a person into custody if the person is gravely disabled or a threat to himself or others. Towner argued that he posed no danger to himself or others and did not meet the threshold to be considered gravely disabled. The district court cited the correct statute, I.C. § 66-326(1), but declined to address the statutory issue, finding instead that, based on the totality of the circumstances, Officer Johns acted reasonably pursuant to his community caretaking function. Because Towner cited the relevant language of the statute as it related to his motion to suppress

4

and his position with respect to it remains the same on appeal as it was in the district court, the issue is properly preserved for this Court's review.

Towner does not dispute that Officer Johns was justified under his community caretaking function to stop and inquire whether Towner needed assistance. Instead, Towner argues the State failed to show that placing him in protective custody was authorized under I.C. § 66-326(1) and, therefore, the seizure was not a permissible exercise of Officer Johns' community caretaking function. Consequently, Towner asserts the evidence of methamphetamine obtained during the subsequent search should have been suppressed. Alternatively, Towner argues that even if placing him in protective custody was a proper exercise of Officer Johns' community caretaking function, the search of his pocket was not and, therefore, the methamphetamine should be suppressed. In response, the State argues that under the community caretaking function analysis, Officer Johns' compliance with I.C. § 66-326(1) is relevant but not controlling in determining whether the seizure and search were constitutionally permissible. The State contends that under the totality of the circumstances, the district court did not err in concluding that Officer Johns' actions were reasonable under the community caretaking function.

The exclusionary rule requires suppression of evidence only when constitutional restraints on searches or seizures have been violated. *State v. Branigh*, 155 Idaho 404, 412, 313 P.3d 732, 740 (Ct. App. 2013). The violation of a state statute in the conduct of a search or seizure does not justify suppression so long as constitutional standards are met. *Id.*

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A detention may be reasonable under an officer's community caretaking function. *State v. Cutler*, 143 Idaho 297, 302, 141 P.3d 1166, 1171 (Ct. App. 2006); *see also State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002) ("A detention is constitutionally permissible if it is reasonably conducted in furtherance of the government agent's community caretaking function."). "The community caretaking function arises from the duty of police officers to help citizens in need of assistance and is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cutler*, 143 Idaho at 302, 141 P.3d at 1171. "Among the core community caretaking activities are the responsibilities of police to search for missing persons, mediate disputes, aid the ill or injured, and provide emergency services." *Id.*

5

In analyzing an officer's conduct under the community caretaking function, a totality of the circumstances test is applied. *State v. Schmidt*, 137 Idaho 301, 303, 47 P.3d 1271, 1273 (Ct. App. 2002). "Community caretaking justifies a detention only if there is a present need for assistance." *Maddox*, 137 Idaho at 825, 54 P.3d at 468. "The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances." *Schmidt*, 137 Idaho at 303-04, 47 P.3d at 1273-74. "Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen." *Id.* at 304, 47 P.3d at 1274. The officer "must possess a subjective belief that an individual is in need of immediate assistance, although the officer may harbor at least an expectation of detecting or finding evidence of a crime." *Id.* "The reasonableness of an officer's action in pursuit of community caretaking is to be tested upon practical considerations of everyday life on which reasonable persons act." *Cutler*, 143 Idaho at 302, 141 P.3d at 1171. As long as community caretaking actions are warranted either in terms of state law or sound police procedure, they do not offend the Fourth Amendment. *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991). Sound police procedure does not require the application of either established protocols or fixed criteria. *Caniglia v. Strom*, 953 F.3d 112, 126 (1st Cir. 2020), *cert. granted*, ___ U.S. ___ (November 20, 2020). Moreover, sound police procedure has been defined broadly and in practical terms. *Id.* The definition "encompasses police officers' 'reasonable choices' among available options." *Id.* (quoting *United States v. Rodriguez-Morales*, 929 F.2d 780, 787 (1st Cir. 1991)).

Towner argues the lawfulness of his seizure turns on whether the State proved that Officer Johns' detention of Towner met the statutory requirements under I.C. § 66-326(1). We disagree. Whether Officer Johns had reason to believe that Towner's detention complied with I.C. § 66-326(1) is only one of the relevant factors to consider when assessing whether, under the totality of the circumstances, Officer Johns properly exercised his community caretaking function. The district court correctly concluded that Officer Johns' actions were consistent with the Fourth Amendment.

Several days prior to Officer Johns' contact with Towner, the police department received a report from the group home where Towner resided reporting that Towner had left the group home and may be a danger to himself. When Officer Johns made contact with Towner, Towner was overtly hallucinating on the side of a busy street, yelling at the sky, and believing that wires were

6

dragging him to hell. Towner could not confirm that he had a safe place to stay, admitted that he was not taking his necessary medications, and initially suggested he should go to the hospital. Officer Johns had two choices: he could take Towner to the hospital for a mental health evaluation and possible treatment or leave him hallucinating on a busy street corner without any reason to believe Towner would not further decompensate. Officer Johns' decision to take Towner into protective custody was a reasonable choice among available options, thereby comporting with sound police procedure. As such, taking Towner into protective custody was a proper exercise of Officer Johns' community caretaking function and did not violate the Fourth Amendment.

Similarly, the search of Towner's pocket was reasonable under the community caretaking function. Searches made pursuant to the community caretaking function can be constitutionally reasonable. *Cutler*, 143 Idaho at 304, 141 P.3d at 1173. Police need not abandon their own safety when reasonably engaged in activity pursuant to the community caretaking function. *Id.* In considering whether a search was conducted reasonably as part of the community caretaking function, we ensure that the officer's stated motives for the search were not a pretext for a criminal investigation. *Id.*

Officer Johns conducted a pat-down search of Towner to ensure Towner did not have access to items that could be used to harm himself or others. During the search, Officer Johns felt an object in Towner's pocket that Officer Johns believed to be a replacement razor blade head. As such, Officer Johns removed the object from Towner's pocket. This action was reasonable to ensure the safety of Towner and Officer Johns. Moreover, before discovering the methamphetamine, Officer Johns was planning to take Towner to the hospital. Determining the nature of the object in Towner's pocket was also reasonable to ensure the safety of the hospital staff who Officer Johns anticipated Towner would encounter.

We hold that under the totality of the circumstances, Officer Johns' seizure and subsequent search of Towner were a reasonable exercise of Officer Johns' community caretaking function.

## IV.

## CONCLUSION

The district court correctly concluded Officer Johns' actions were reasonable under the community caretaking function and, therefore, did not err in denying Towner's motion to suppress. Accordingly, we affirm Towner's judgment of conviction.

Judge GRATTON and Judge LORELLO **CONCUR**.