**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45188**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 30, 2018** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| ARTURO GONZALEZ FLORES, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel Hoagland, District Judge.

Order denying motion to suppress, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Arturo Gonzalez Flores appeals from the district court's order denying his motion to suppress. On appeal, Flores argues the officer abandoned the original purpose of the traffic stop from the outset because the officer was unaware of the specific nature of the traffic violation. Alternatively, Flores asserts the district court erred in ruling reasonable suspicion of drug activity supported the investigatory stop. For the reasons provided below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Police received a report from a school resource officer that a juvenile girl had reported that her parents were using heroin at home. The juvenile also reported that several other people either lived at or frequented the home. The juvenile reported that she observed heroin in her home recently, frequently smelled heroin when arriving home, and could describe heroin's

1

appearance and smell. Based upon this information, two officers went to the juvenile's home to conduct a health and welfare check, but were denied access to the house by the juvenile's mother, who appeared nervous, guarded, lethargic, and unkempt. Approximately two hours later, police began surveillance of the home. Shortly thereafter, a concerned citizen informed officers there was a heavy flow of stop-and-go traffic at the home, and on one occasion, a juvenile male was chased down the street by an adult male. One officer also received information regarding an incident twelve days prior involving police responding to a report of a woman at the home experiencing seizures induced by a heroin overdose.

Approximately thirty minutes after the officers began surveilling the home, a vehicle pulled up in front and Flores exited the passenger side. Flores entered the house while his wife walked to pick up her son at a nearby school.[1] Approximately twenty-five minutes later, Flores's wife returned to the vehicle with her son, Flores exited the house, and the three entered the car and left. As the vehicle drove away, two officers ("Officer One" and "Officer Two") followed the vehicle in undercover police cars. Officer One observed Flores's wife's son moving around, unbuckled, in the back seat. Officer Two observed the vehicle fail to signal before turning. Officer Two testified it was difficult to follow the vehicle as it weaved quickly through subdivisions, and at one point, Officer Two lost the vehicle. However, Officer One was able to locate it shortly thereafter. Both officers relayed this information to an on-duty officer ("Officer Three") who was in a marked police vehicle and listening to radio traffic of the ongoing investigation.

Officer Three located the vehicle and initiated a traffic stop based upon the information relayed to him from Officers One and Two. Just prior to initiating the stop, Officer Three was advised that the officers needed the stop "because of possibly some drug business going on at an address." After stopping the vehicle, Officer Three asked the driver and passenger for photo IDs. As Officer Three was running a driver and warrant check, a drug detection unit arrived. Officer Three then directed Flores to exit the vehicle and, after a pat-down search, placed him in handcuffs, informing Flores it was for safety. Officer Three directed Flores's wife to exit the vehicle. As she exited the vehicle, she handed Officer Three a small rubber ball and informed

---

[1] It was later revealed that Flores and his wife used to live at the residence; however, this information was not known at the time of the traffic stop.

Officer Three there was marijuana inside. The drug dog was then deployed and alerted. Officer Three conducted a subsequent search of the vehicle, which revealed two baggies floating in liquid in the middle console. Flores was charged with two felony counts of possession of a controlled substance for heroin and methamphetamine and a persistent violator enhancement.

Flores filed a motion to suppress the evidence found in the vehicle, arguing that because Officer Three did not personally observe or recall the violation justifying the traffic stop, there was not reasonable suspicion to initiate an investigatory stop. Additionally, Flores argued that because Officer Three was unaware of the nature of the traffic violation, Officer Three abandoned the purpose of the stop and unconstitutionally detoured from the initial purpose of the stop. At the hearing on the motion to suppress, Flores conceded there was reasonable suspicion for the traffic stop based upon the turn signal violation. The district court denied the motion to suppress. In so doing, the district court found that Officer Three had an objectively reasonable basis for making the investigatory stop based upon the observed traffic violation by the requesting officers, that the drug-dog sniff did not add time to the stop, and that the officers were justified and acted reasonably in handcuffing Flores. Alternatively, the district court ruled that Officer Three had reasonable suspicion to initiate a traffic stop on the basis of suspected drug activity. After a jury trial, Flores was found guilty of possession of methamphetamine, possession of heroin, and the enhancement for being a persistent violator. Flores timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The Fourth Amendment to the United States Constitution provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. CONST. amend. IV. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Flores concedes the officer had reasonable suspicion to make a traffic stop. However, Flores argues that while Officer Three was aware of a traffic violation, he was not aware of the nature of the violation and therefore could not diligently pursue the original purpose of the traffic stop. Thus, Flores maintains the officer abandoned the purpose of the stop at the outset because without knowledge of the nature of the violation, there is no evidence that the officer intended to, or was in the process of, completing a traffic citation. We take this argument to be twofold. First, that Officer Three, who initiated the stop, did not have reasonable suspicion because he did not have personal knowledge of the nature of the traffic violation. Second, that Officer Three abandoned the traffic stop to pursue a drug investigation. The State argues the officer had an objectively reasonable basis for the stop based upon the collective knowledge of the officers and that all actions leading to the discovery of the contraband were ordinary inquiries incident to the traffic stop. We agree with the State on both fronts.

4

We have previously rejected Flores's argument that in order for the collective knowledge doctrine to apply, the officer making the traffic stop must possess knowledge beyond the fact that other officers have information of a violation as it would eliminate the collective knowledge doctrine, requiring reasonable suspicion on the part of the initiating officer. *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct. App. 2004). We continue to hold that under the collective knowledge doctrine, an officer is not required to be privy to the underlying information which constituted the grounds for reasonable suspicion. *Id.* While ordinarily articulable facts supporting reasonable suspicion are grounded in an officer's personal perceptions and inferences, in appropriate circumstances, those facts which provide reasonable suspicion may be based upon external information. Therefore, whether an officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances, which includes the collective knowledge of all officers and dispatchers involved. *Id.* Thus, an officer may properly make an investigatory stop on request from another officer, without knowledge of the facts that provide reasonable suspicion, so long as the requesting officer possessed the requisite reasonable suspicion. *Id.* at 964, 88 P.3d at 783.

Applying this standard to the case at hand, it is clear that the information held collectively by the police justified a finding of reasonable suspicion for the stop. Flores does not dispute this fact. Rather, Flores's challenge is based on the fact that Officer Three stopped the vehicle without knowing the nature of the traffic violation and therefore essentially could not have pursued issuing a ticket for the traffic violation. Because Flores concedes the officers relaying the traffic violation information had reasonable suspicion to initiate a traffic stop based upon the traffic violation, we must determine whether, based upon the totality of the circumstances, Officer Three was pursuing the traffic violation or whether Officer Three abandoned the purpose of the traffic stop.

Once an officer has reasonable suspicion to make a traffic stop, the officer is not permitted to freely investigate any criminal activity, but rather is limited in his investigation. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). A seizure for a traffic violation justifies a police investigation of that violation, which includes inquiries beyond determining whether to issue a traffic ticket. *Rodriguez v. United States*, ___ U.S. ___, ___, 135

5

S. Ct. 1609, 1614 (2015). It encompasses ordinary inquiries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* at ___, 135 S. Ct. at 1615. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

Similarly, an officer may take certain precautions to ensure officer safety because "the government's officer safety interest stems from the mission of the stop itself." *Id.* at ___, 135 S. Ct. at 1616 (holding traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to safely complete his mission). These precautions include ordering all occupants of a vehicle, driver and passengers, to exit a stopped vehicle as a precautionary measure to protect the officer's safety. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997).

A traffic stop's purpose does not encompass "[o]n-scene investigation into other crimes." *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1616. Such an investigation detours from the original mission of the stop. *Id.* Yet, not all detours are constitutionally prohibited; only those which prolong the stop for longer than is reasonably necessary to accomplish the mission of the stop. *Id.* Thus, if conducting an unrelated detour measurably extends the stop, the constitutional shield against unreasonable seizures is violated. *Id.* at ___, 135 S. Ct. at 1612. "A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* The reasonableness of the seizure is contingent upon what the officers actually do. *Id.* at ___, 135 S. Ct. at 1616.

Based upon the record, it is clear that Officer Three was conducting a traffic stop. He was performing the ordinary tasks tied to a traffic stop, such as checking the driver's and passenger's licenses, obtaining current information regarding address and phone number, inquiring as to whether either is on probation or parole, requesting insurance and registration, and running the information through dispatch. *Rodriguez*, ___ U.S. at ___, 135 S. Ct. at 1615; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009). As Officer Three ran a warrants check, an officer arrived with a drug detection dog. At this point, Flores was asked to exit the vehicle, was patted down, and handcuffed. Flores's wife was then asked to exit the vehicle, at which point she handed Officer Three an item containing marijuana. With the exception of exiting the

vehicle and handcuffing, these actions are standard actions of an officer conducting a traffic stop. However, neither automatically makes the stop unreasonable nor qualifies as a detour from the original purpose of the stop; rather, both are permissible depending on the circumstances of the case. *Wilson*, 519 U.S. at 412 (requiring occupants to exit the vehicle during a traffic stop); *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998) (approving use of handcuffs during a traffic stop). It may also be worth noting that although Flores labels Officer Three's actions a "drug investigation," he has not identified any conduct by that officer indicative of a "drug investigation." Rather, as noted, his conduct was consistent with a traffic stop. Based upon the totality of the circumstances in this case, Officer Three was diligently pursuing the traffic violation when Flores's wife handed over contraband. At that point, reasonable suspicion existed to expand the stop. Because we have determined Officer Three had reasonable suspicion to initiate the traffic stop and diligently pursued the traffic stop, we need not address the district court's finding of reasonable suspicion of drug activity that justified the investigatory stop.

## IV.

## CONCLUSION

An officer may properly make a traffic stop based upon the direction of another officer so long as the officer requesting assistance in making the traffic stop possessed the requisite reasonable suspicion. Because the officer directing the traffic stop observed a traffic violation, there was reasonable suspicion to stop the vehicle. In addition, the officer's actions were ordinary incidents of a traffic stop, and thus the officer did not deviate from the original purpose of the stop. Therefore, the district court's order denying the motion to suppress is affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.